1811.
DECEMBER.

COALE, et al. vs. MILDRED's Adm'r.

Coale
vs.
Mildred

Bonner vs Boyd

On a bill filed in chancery in the name of the obligee in a bond, which had been assigned to a third person, who was not made a party in the cause—*Held*, that the assignee of the bond should have been made a party.

APPEAL from a decree of the Court of Chancery, annulling certain deeds and declaring them fraudulent as to creditors. The bill of the complainant, (now appellee,) alleged, among other things not material to be stated, a debt due to him on bond, &c. from the ancestor of the defendants, (now appellants.) And it was proved by the testimony in the cause, that the bond was assigned by *W. Cooke*, the attorney of the complainant, to *T. H. Backer*, and by him assigned to *P. Macgill*; neither *Backer* nor *Macgill* were made parties. The chancellor having decreed in favour of the complainant, the defendants appealed to this court.

The cause was argued before BUCHANAN, NICHOLSON, and EARLE, J.

*Martin* and *Magruder*, for the Appellants, contended, that the proper parties were not before the court. That the complainant had no interest, having assigned away the bond to *Backer*, who assigned to *Macgill*. That *Macgill* should have been a party complainant. They referred to *Hind's Chan. Pr. 2*.

*Pinkney*, for the Appellee, admitted that proper parties had not been made.

DECREE REVERSED.

---

DECEMBER.

BONNER vs. BOYD.

In an action of slander the plaintiff proved that the defendant, amongst a crowd of people assembled, said, pointing at the plaintiff, *there is the man who stole my horse, and fetched him home yesterday morning*——*Held*, that the words were actionable.

APPEAL from *Baltimore* County Court. This was an action of slander, and the words charged in the declaration to have been spoken, were, that "he (meaning the plaintiff, now appellant,) had stolen my horse, and brought him home this morning." "His partner stole my pocket book; and there is the man, (pointing at and meaning thereby him the plaintiff,) who stole my horse and brought him home this morning." Also "that he, (meaning the plaintiff,) had stolen my horse, and brought him home this morning." The general issue was pleaded. On the trial the plaintiff proved that the defendant, (now appellee,) amongst a crowd of people, assembled at a public vendue, said, pointing at the plaintiff, "there is the man who stole my horse, and fetch-

ed him home yesterday morning." The defendant then moved the court to direct the jury, that the plaintiff was not entitled to recover. And the Court, [*Nicholson* Ch. J. and *Jones*, A, J.] gave the direction. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court, where the cause was argued before BUCHANAN, EARLE, and JOHNSON, J.

1811.

Dunnington
vs
Dunnington

*Winder*, for the Appellant, contended, that the words spoken were actionable; and that the offence alleged against the plaintiff brought him in danger of legal punishment.

*Boyd*, for the Appellee, cited 2 *Esp. Dig.* 497, 498. *Bull. N. P.* 5. And contended that the words spoken imported but a trespass, and not an act which could make the plaintiff liable to a criminal prosecution.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

## DUNNINGTON's Ex'r. vs. DUNNINGTON's Adm'r.

DECEMBER.

APPEAL from *Charles* County Court, from a judgment in favour of the defendant below, (now appellee,) in an action of replevin brought against him on the 30th of January 1804, for a negro boy named *Jesse.* The defendant pleaded property, *non cepit infra tres annos*, and *actio non accrevit infra tres annos.* To these pleas there were the general replications, and issues were joined. At the trial, the plaintiff proved by a competent witness, that the negro boy in dispute was the property of *William Dunnington*, senior, the plaintiff's testator, and was loaned by him to his son *William Dunnington*, junior. The plaintiff then gave in evidence, without objection, the will of *William Dunnington*, senior, dated the 8th of September 1794, reciting, that "as to what worldly estate it hath pleased Almighty God to bless me with, I dispose of in the following manner." Sundry devises and bequests are contained in this will, of lands and negroes, but the negro boy *Jesse* is not named therein. The devise to *William Dunnington*, junior, is of land, and also a negro lad called *John*; and the testator directed that the balance of his estate should be divided between his sons *Peter* and *Francis.* The lat-

In replevin by W's executor against E's administrator, for a negro boy, the defendant, for the purpose of proving a gift of the negro boy, by W to J, whose admin istratrix E was in her life-time, offered in evidence K, the wife of B, which K was the daughter and one of the representatives of J and of E, and to restore her competency, gave in evidence a receipt given by B to E, as the administratrix of J, for his wife's share of her deceased father J's estate—Held, that K's testimony was inadmissible.