Dorsey *vs.* Whipps.—1849.

AMOS DORSEY *vs.* WILLIAM WHIPPS.—*December*, 1849.

In an action of slander, if the words stated in the declaration are not actionable *per se*, objections to the insufficiency of the declaration may be taken advantage of by motion in arrest of judgment.

Where words are *prima facie* actionable, no prefatory inducement is required, but the reverse is the case where the words do not naturally and *per se* convey the meaning the plaintiff would give to them, or if reference to some extrinsic matter is necessary, in order to their explanation.

Saying of the plaintiff, "*M A* told me, during the time he was managing for *Mr. O*, he, *A*, missed some of the plough irons from a plough, and, on going to plaintiff's shop, he there found the irons, and that he then asked plaintiff how those irons came into his shop? and plaintiff replied, he knew not, but requested him, *A*, to say nothing about it, as it would be injurious to his character," is not *per se* actionable.

Saying of the plaintiff, "I have been informed that some gentleman in the neighborhood of plaintiff had missed some clevises off his ploughs, and went to plaintiff's to have others made, and on arriving there, found his clevises in the possession of plaintiff, that he claimed the clevises, and plaintiff pretended not to know how they came into his shop, but afterwards acknowledged that he had purchased them from one of claimant's negroes, and begged him to say nothing about it, as it would ruin him," is not *per se* actionable.

No words are actionable unless they impute a crime to the plaintiff, which would subject him to punishment, and in deciding what words are actionable, the courts have shown no wish to encourage litigation.

If words are not actionable in themselves, their meaning cannot be extended by an innuendo so as to make them actionable.

If the words may be understood in a sense not criminal, there must be a colloquium in the prefatory part of the declaration, to show they were spoken in a criminal sense.

The office of an innuendo is to explain doubtful words, where there is matter sufficient in the declaration to maintain the action; it cannot extend the sense of the words beyond their own meaning, unless something be put upon the record for it to explain.

The plaintiff having proved the words charged, and other words showing malice, the defendant, for the purpose of justifying such other words, offered, without objection, proof of matters impeaching the plaintiff's character; whereupon the latter, with a view *to rebut this evidence impeaching his integrity*, offered to give evidence that he has always been reputed, among all his acquaintances, as a man of integrity. HELD: that it was error to admit this evidence.

If the slander be not justified, the law presumes the character of the plaintiff

to be good, and it has been recently decided, that evidence of character, on the part of the plaintiff, is inadmissible, whether there is a justification or not.

Appeal from *Howard District* court.

This was an action of *slander* brought by the appellee against the appellant, on the 24th of August, 1846.

The plaintiff declared, with the usual inducement of good character and innocence, in the *first count*, that in a certain discourse which the defendant had in the presence and hearing of *George W. Waters*, and of divers good and worthy citizens of this State, on the 1st of July, 1846, of and concerning the said plaintiff, he (defendant,) then and there falsely and maliciously said, &c., these false, &c., words following, of and concerning the said plaintiff, in the presence and hearing of said *Waters* and those citizens; that is to say, "*Horatio Keith* told me, during the time he (meaning the said *Keith*,) was managing for *Mr. Oliver*, that he (meaning the said *Keith*,) missed some of the plough irons from a plough, and on going to *Mr. Whipps'* shop, (meaning a blacksmith shop worked by the said plaintiff,) he (meaning the said *Keith*,) there found the irons, and that he then asked *Mr. Whipps* (meaning the plaintiff,) how those irons came into his shop, and *Whipps* replied, he knew not, but requested him (meaning said *Keith*,) to say nothing about it, as it would be injurious to his character; the said defendant thereby meaning that the said plough irons had been stolen feloniously, and received by plaintiff, knowing them to have been feloniously stolen."

In the *second*, that in a certain other discourse, defendant said, &c., in the presence and hearing of one *Worthington*, and others, "I (meaning the defendant,) have been informed, that some gentleman in the neighborhood of *Mr. Whipps*, (meaning the plaintiff,) had missed some clevises off his ploughs, and went to *Whipps* to have others made, and, on arriving there, found his clevises in the possession of *Mr. Whipps*, (meaning the plaintiff;) that he (meaning said gentleman,) claimed the clevises, and *Mr. Whipps* (meaning the plaintiff,)

pretended not to know how they (meaning said clevises,) came into his shop, (meaning a blacksmith shop worked by the plaintiff,) but afterwards acknowledged that he (meaning the plaintiff,) had purchased them (meaning said clevises,) from one of the claimant's (meaning said gentleman's) negroes, and begged him (meaning said gentleman,) to say nothing about it, as it would ruin him, (meaning the plaintiff;) the said defendant thereby meaning that the plaintiff had acknowledged that he had purchased said clevises from one of the negroes of said gentleman, and meaning further, that the said clevises had been feloniously stolen by said negro, and purchased by said plaintiff from him, knowing the same to have been feloniously stolen."

In the *third*, that the defendant further intending to hurt, &c., the said plaintiff in name, &c., and *his aforesaid trade and business*, and to cause him to be brought into great scandal and disgrace, and to subject him to the pains and penalties by the law inflicted on persons guilty of unlawfully dealing with slaves, heretofore, to wit, &c., falsely, &c., in the presence and hearing of *Wm. H. Worthington*, &c., reported, &c., of and concerning the said plaintiff, in his *said trade and business*, the false, &c., words following: (same as in the *second count;*) the said defendant thereby meaning that the plaintiff had acknowledged that he had unlawfully purchased the said clevises from the negro of the gentleman so referred to.

This last count was abandoned by the plaintiff's counsel, in argument to the jury.

The defendant filed a general demurrer, which being overruled, he pleaded *not guilty*.

1st Exception. The plaintiff having offered evidence tending to prove the speaking by defendant of the words charged in the declaration, in order to show malice, proved by *James Cook*, that the defendant had said to him that *Whipps* was in the habit of dealing with negroes in the neighborhood, and further proved that the plaintiff was, at that time, a blacksmith, and kept a shop for the accommodation of the public.

The defendant, then, for the purpose of justifying the conversation with the witness, *Cook*, proved by *Buckingham*, that

in 1843, or 1844, when witness was in the employment of the plaintiff, he heard a negro slave ask *Whipps* if he wanted to buy some crowbars, and *Whipps* said he would take them; no bargain was then made, but the negro afterwards left two crowbars at *Whipps'*. The same witness also proved, that he had known *Whipps* to purchase old horse shoes from negroes.

The plaintiff then proved, by *George Cook*, that the defendant had told him that *Whipps* was a scoundrel, and was in the habit of dealing with negroes; and when the witness cautioned him, said he could prove it, and then told him about the plough irons. And thereupon, the plaintiff, with a view to rebut the evidence as above given by the defendant, to impeach the integrity of the plaintiff, offered to give in evidence that the plaintiff had always been reputed and considered among all his acquaintances as a man of integrity; to the admissibility of which evidence, as offered, the defendant objected, but the court (WILKINSON and BREWER, A. J.,) overruled the objection, and admitted the evidence to go to the jury, and the defendant excepted.

2ND EXCEPTION. The plaintiff then proved by the witness, *Waters*, that defendant had spoken, of and concerning him, the words as charged in the first count of the declaration.

The defendant then prayed the court to instruct the jury:

1st. That the plaintiff was not entitled to recover upon the first and second counts, because the words proved are not actionable under the pleadings.

2nd. That the plaintiff was not entitled to recover under the pleadings, because the words proved are not actionable *per se*.

Which instructions the court refused to give, and the defendant thereupon excepted.

The verdict being in favor of the plaintiff, the defendant moved the court in arrest of judgment, for the following reasons:

1st. Because the words charged in the 1st and 2nd counts are not actionable.

2nd. Because the words charged in the different counts are

not so therein laid and set forth, as to entitle the plaintiff to maintain his action.

3rd. Because there is no colloquium in the declaration, showing to what the words spoken referred; and

4th. Because the plaintiff, by his counsel, having abandoned the third count, the words charged in the remaining counts are not so therein laid and set forth, as to entitle the plaintiff to maintain his action.

Which motion the court overruled, and the defendant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, MAGRUDER, MARTIN, and FRICK, J.

By WM. H. DORSEY and CHAS. H. PITTS, for the appellant, and

By BROOKES and HAMMOND, for the appellee.

MAGRUDER, J., delivered the opinion of this court.

This appeal is taken from the court in and for *Howard* district. The suit was instituted by the appellee, and is an action of slander. The plea was not guilty, and in the court below the verdict was obtained by the plaintiff.

In the course of the trial, several exceptions were taken by the defendant, and after the verdict, reasons in arrest of judgment were filed.

Several of the exceptions, as well as the motion in arrest of judgment, put to us the question, whether the words charged to have been spoken of the plaintiff by the defendant, are actionable? These we proceed to notice.

It is to be remarked, that no special damage is charged to have resulted to the plaintiff, from the alleged slander, and unless the third count form an exception, it is not alleged in the declaration, that the words spoken were spoken of the plaintiff with reference to his trade.

Since the decision of this court, in the cases of *Chaplin vs. Cruikshanks*, 2 *H. & J.*, 246, and *Sheely against Biggs*,

*same volume*, 363, it must be considered to be law, that if the words stated in the declaration are not actionable, objections to the insufficiency of the declaration may be taken advantage of by motion in arrest of judgment. Indeed, in the case first cited, the court went further, and refused to give an instruction, simply because, if such was the law, the defendant might take advantage of it in arrest of judgment. The reason of this was, that if the defendant would not demur because of the supposed defect in the declaration, he should not, especially if he justified, obtain a verdict simply because of this defect, and thus place upon record what seemed to be proof that the matter pleaded in justification had been proved to the satisfaction of the jury. Although a different practice has prevailed of late years in our courts, yet its propriety is not quite clear, and would not seem to justify a reversal of the court's decision in that case.

In disposing of the motion in arrest of judgment, it will be remembered, that by agreement of parties, the third count is to be considered as withdrawn.

No doubt, if the words charged to have been spoken were *prima facie* actionable, no prefatory inducement would be required. It is otherwise, however, if the words do not naturally and *per se* convey the meaning which the plaintiff would give to them, or if a reference to some extrinsic matter is necessary, in order to their explanation. In 1 *Chitty on Pleading*, 342, we are furnished with cases which illustrate this.

We do not think that the words charged in this declaration to have been spoken by the defendant, are *per se* actionable. "No words are actionable unless they impute a crime to the plaintiff, which subjects him to punishment." 2 *H. & J.*, 364. And in 1 *Starkie on Slander*, 43, it is said: "To impute any crime or misdemeanor, for which corporal punishment is to be inflicted, is actionable without proof of special damage."

All opprobrious words are not necessarily actionable. Very many words spoken of another, and which, if believed, would deprive him of the esteem of others, yet will not, *per se*, give to him a right of action. In deciding which words should be

deemed actionable, the courts have shown no wish to encourage a litigious disposition.

If, in order to supply any defect in the words spoken by the defendant, and to make him answerable for words not in themselves actionable, we are referred to any innuendo to be found in the first or second counts, it is a sufficient answer to this to say, "if the words in themselves are not actionable, their meaning cannot be extended by it, (the innuendo,) to make them actionable. If the words may be understood in a sense not criminal, there must be a colloquium in the introductory part, to show they were spoken in a criminal sense, or they are not actionable. The office of the innuendo, is to explain doubtful words, where there is matter sufficient in the declaration to maintain the action." 2 *H. & J.*, 364. Again, "an innuendo cannot extend the sense of the words beyond their own meaning, unless something be put upon the record for it to explain." 1 *Starkie on Slander*, 422. 4 *G. & J.*, 402.

In the first exception it appears, that the plaintiff (having, as it is supposed,) proved the words charged in the declaration, and other words spoken at different times of him by the defendant, the latter for the purpose of justifying the other words spoken by him, was permitted to offer proof of matters, certainly not within the issue.

Touching the admissibility or non-admissibility of this proof, we are not now to speak. It seems, all of it, to have gone to the jury by consent.

"Thereupon, (the exception proceeds,) the plaintiff, *with a view to rebut the evidence as above given* by the defendant, *to impeach the integrity of the plaintiff*, offered to give evidence, that the plaintiff has always been reputed and considered among all his acquaintances as a man of integrity." To this evidence the defendant objected, and because of its admission, this, the first, exception was taken. In admitting this testimony, we think that the court below erred. The character of the plaintiff was not in issue. In some courts, indeed, such evidence is admitted. There is, it must be acknowledged, a variety of doctrine upon this subject, to be found in the reported

decisions of the courts of our sister States and of *England*, and this may be mentioned as a reason why we should admit with extreme caution those opinions, "which are received from year to year, and admitted in our courts of justice, if not as rules, at least as guides for our decision."

A cardinal rule in regard to testimony is, that it must be confined to the point in issue, and correspond with the allegations. This excludes "all evidence of collateral facts, or facts which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute." "In some instances, however, evidence of facts, which have no apparent connection with the matter in issue, have been admitted." See 1*st Greenleaf on Evidence, part* 2, *ch.* 1. A departure from this rule is allowed in some actions of *tort*, and evidence is received, which, it is supposed, will assist the jury in ascertaining the amount of injury sustained by the plaintiff, and the amount of damages to be assessed by them. To the disregard of the rules of evidence, however, it is frequently owing that much time is wasted, and the real points to be decided by them, are lost sight of by juries. These evils should be corrected, as far as it is possible, and in regard to testimony, and what is admissible upon the question of damages, we have some excellent remarks in 2 *Greenleaf on Evidence,* "*Damages.*"

If the slander be not justified, the law will presume the character of the plaintiff to be good, and it will generally be found that it is best for him to be contented with this legal presumption. But here it was introduced, not to increase the damages, but as rebutting testimony, and ought it not to have been admitted to disprove the charges which the defendant had been allowed to introduce? Its pertinancy, when offered for that purpose, may well be questioned. It proposes to set off the opinions which his neighbors entertain of him, against what may be considered as proof of charges injurious to the plaintiff's character, and yet it only amounts to this, that his neighbors are not among his supposed calumniators.

If the plaintiff be permitted, for this purpose, to give in evi-

dence the opinion entertained of him "by all his acquaintances," the defendant must be permitted to prove, by similar and other testimony, that the plaintiff has contrived to get and retain for years, in a small circle of acquaintances, a good name, to which he was never entitled, and thus he is more slandered in the court room, than he, perhaps, ever would have been anywhere else.

It is because of this mode of trying cases of slander, and of the investigation which the plaintiff himself frequently provokes, that occasion was taken to remark, that when the plaintiff succeeds in such an action, "he recovers a reputation disfigured by invective and tarnished by too much handling."

In the case of *Wagner vs. Holbrunner*, 7 *Gill*, 296, it was decided by this court, that some testimony of this description is admissible, and we are bound by the maxim, *stare decisis*, to depart, in some measure, from what perhaps would be the most correct rule upon the subject. See 2 *H. & G.*, 30. 6 *G. & J.*, 413. It is believed, however, that this court has never sanctioned the admission of testimony like this now under consideration. In 2*nd Phil. on Ev.*, 247, *(2nd edition,)* he refers to a recent case, in which it was decided that such evidence is inadmissible on the part of the plaintiff, whether there is a justification or not, and this court, in the case of *Brooke and Berry*, 2 *Gill, p.* 97, rejected all the evidence of character there offered as rebutting testimony. In 2*nd Starkie on Ev., p.* 303, *(7th Am. Ed.,)* it is said, in civil proceedings, unless the character be put in issue by the nature of the proceeding, evidence of his character is not in general admissible.

We cannot think, that the testimony objected to in this exception was admissible.

JUDGMENT ARRESTED.