JOB HAINES *vs.* WILLIAM SMITH CAMPBELL.

*Slander—Actionable words— Province of the Jury —Colloquium and Innuendo.*

The words, "I threw the burning of W's barn into C's face," without some prefatory explanation, would convey no meaning sufficiently definite for the action of a Court of justice. But if the circumstances set forth in the count are capable of meaning that C. maliciously and voluntarily burnt W's barn, and it is averred in the count that such act was punishable under the law of the State in which the barn was located, by confinement in the penitentiary, said words are actionable.

If the words, charged to have been uttered, are capable of the meaning attributed to them in the *innuendo* as explanatory of the previous part of the declaration, it must be left to the jury to find whether they were in fact so understood by the persons who heard them.

The words: "While I did not tell C. that he burnt W's barn, I gave him to understand that his nearest neighbors believed that he did," meaning thereby that he, the plaintiff, was guilty of the crime of maliciously and voluntarily burning the said barn, are sufficient to sustain the *innuendo*.

If words spoken convey an imputation of crime, they are actionable in whatever mode their meaning may be expressed. They may be, by way of insinuation, interrogation, by ironical praise, or by any form of speech understood by the hearers.

A count charging the defendant with speaking the words: "While I did not tell C. that he burnt W's barn, I gave him to understand that his nearest neighbors believed that he did," with the *innuendo:* meaning thereby that the plaintiff's neighbors charged that he, the plaintiff, was guilty of the crime of maliciously and voluntarily burning the said barn of the said W." states a cause of action.

APPEAL from the Circuit Court for Cecil County.

Campbell brought an action at law against Haines. In the first. count of the declaration the plaintiff pro-

ceeded for false imprisonment. The second, third, and fourth counts were for slander. The defendant demurred to each and every count; the demurrers were overruled, and thereupon the plea of not guilty was filed, and issue joined. Upon the trial the verdict was for the plaintiff, and after judgment the defendant appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, McSHERRY, and BRISCOE, J.

*L. Marshall Haines,* and *Robert C. Thackery,* for the appellant.

Words in respect to a charge of crime to be actionable, without special damage, must import an absolute charge of crime by the defendant as against the plaintiff. *Sheely vs. Biggs,* 2 *H. & J.,* 363; *Dorsey vs. Whipps,* 8 *Gill,* 462; *Tebbetts vs. Goding,* 9 *Gray,* 254; *Bloss vs. Tobey,* 2 *Pick.,* 320; *Krebs vs. Oliver,* 12 *Gray,* 240, 242; *McCuen vs. Ludlum,* 17 *N. J. Law,* 12; *Tozer vs. Mashford,* 4 *Eng. Law & Eq.,* 451, and 6 *Exch.,* 539; *Odgers on Slander,* star page 61; *Poe's Pleadings, sec.* 171; *Jones vs. Hungerford,* 4 *G. & J.,* 402.

Taking the words laid in those counts altogether, they show that the defendant did not intend to make any charge of criminal conduct against the plaintiff, but at most merely expressed that others entertained a suspicion or opinion. Words merely imputing opinion, belief or, suspicion of crime are not actionable. *Tozer vs. Mashford,* 4 *Eng. Law & Eq.,* 451; *Same Case,* 6 *Ex.,* 539; *Harrison vs. King,* 7 *Taunton,* 431, (2 *Eng. Com. Law,* 165;) *Simmons vs. Mitchell,* 6 *Appeal Cases,* 156.

In this last case decided by the Privy Council of England, the words were far stronger than those laid in this *narr.* and were held not actionable. In deciding which words should be deemed actionable, the Courts have

Haines *vs.* Campbell.

shown no wish to encourage a litigious disposition. *Dorsey vs. Whipps,* 8 *Gill,* 462–3; *Griffin vs. Moore,* 43 *Md.,* 251.

Whether the words laid in the *narr.* will bear the interpretation.of making such absolute charge of crime, is a question for the Court, to be decided on demurrer, or, formerly, by motion in arrest also. *Townshend on Libel and Slander,* sec. 342, (4*th Edition;*) *Sheely vs. Biggs,* 2 *H. & J.,* 363; *Tebbetts vs. Goding,* 9 *Gray,* 254.

But even if the Court should be of the opinion that the words laid in the third and fourth counts, are capable of bearing the meaning ascribed to them by the *innuendo* of the third count, the fourth count is radically defective, because of an insufficient *innuendo.* The words laid in this count do not contain within themselves a charge of the crime of arson, or of any crime, as they do not say the burning was wilful and malicious, and are therefore not actionable *per se. Jones vs. Hungerford,* 4 *G. & J.,* 402; *Tebbetts vs. Goding,* 9 *Gray,* 254.

They are capable of bearing an innocent interpretation, if indeed that is not their only meaning, and an *innuendo* is therefore necessary. *Odgers on Libel and Slander,* star *pages* 99–100; *Townshend on Libel and Slander,* sec. 338; *Poe's Pleading,* sec. 173.

The *innuendo* must distinctly aver that the words laid bear a specific actionable meaning. *Odgers on Libel and Slander,* star *pages* 99–100, 530; *Townshend on Libel and Slander,* sec. 338; *Cox vs. Cooper,* 12 *W. R.,* 75; 9 *L. T.,* 329; *Hancock vs. Winter,* 7 *Taunton,* 205, (2 *Eng. Com. Law,* 71; *Griffiths vs. Lewis,* 8 *Adol. & Ellis, N. S.,* (55 *Eng. Com. Law,* 840–851;) *Jackson vs. Adams,* 2 *Bing., N. C.,* 402; (29 *Eng. Com. Law,* 374;) *Jones vs. Hungerford,* 4 *G. & J.,* 407; *Newbold & Sons vs. The J. M. Bradstreet & Son,* 57 *Md.,* 51.

*Albert Constable,* for the appellee.

Haines *vs.* Campbell.

BRYAN, J., after stating the case, as reported, delivered the opinion of the Court.

No objection has been stated to the first count, nor have we perceived any. In the second count it was alleged that the defendant spoke these words of and concerning the plaintiff: "I threw the burning of William Witman's barn into Campbell's face." The words without some prefatory explanation would convey no meaning sufficiently definite for the action of a Court of justice. The count, however, sets forth that Witman was the owner of a farm in the State of Pennsylvania, upon which there was a barn, not adjoining any dwelling-house, and in the barn there were hay and grain; that the barn had been destroyed by burning; "that at the time of the said burning, and thence hitherto, by the law of said State, any person who maliciously and voluntarily burns any barn having hay or grain therein, although the same shall not be adjoining to any dwelling-house, shall, upon legal conviction thereof, be sentenced to undergo solitary confinement in the Eastern or Western Penitentiary of said State, at labor, for a period of not less than one, or more than ten years for the first offence, and not more than fifteen years for the second offence." It was then alleged that the defendant falsely and maliciously spoke and published of the plaintiff in relation to the burning of the barn, the words above mentioned. The Court is thus informed of the fact of the burning and its penal consequences, if maliciously and voluntarily done. These statements in the technical language appropriate to the action of slander are called the *averment*. The *colloquium* is the conversation or discourse in relation to the extrinsic facts embraced in the averment. The *innuendo* is the statement that the defendant meant that "he, the plaintiff, had committed the crime of maliciously and voluntarily burning the said barn of the said Witman in the State

of Pennsylvania." In *Dorsey vs. Whipps,* 8 *Gill,* 463, it is said "if the words in themselves are not actionable, their meaning cannot be extended by it, (the innuendo,) to make them actionable. If the words may be understood in a sense not criminal, there must be a colloquium in the introductory part, to show they were spoken in a criminal sense, or they are not actionable. The office of the innuendo is to explain doubtful words, where there is matter sufficient in the declaration to maintain the action." *Sheely vs. Biggs,* 2 *H. & J.,* 364. Again, "an innuendo cannot extend the sense of the words beyond their own meaning, unless something be put upon the record for it to explain." 1 *Starkie on Slander,* 422; *Jones vs. Hungerford,* 4 *G. & J.,* 402. And in *Peterson vs. Sentman,* 37 *Md.,* 155, it is said "words that are not actionable *ex vi termini* cannot be made so by an *innuendo,* but must be aided by a proper averment and *colloquium,* which will warrant the explanatory meaning given them by the *innuendo.*" But if the words are capable of the meaning attributed to them in the *innuendo,* as explanatory of the previous part of the declaration, it must be left to the jury to find whether they were in fact so understood by the persons who heard them. The words "I threw the burning of William Witman's barn into Campbell's face," under the circumstances alleged in the second count, are certainly capable of meaning that Campbell maliciously and vlountarily burnt Witman's barn; and if so, they are actionable.

The third count contains the same averment and *colloquium* as the second. The defamatory words charged are these: "While I did not tell Campbell that he burnt Witman's barn, I gave him to understand that his nearest neighbors believed that he did." The *innuendo* is the same as in the second count. If words spoken convey an imputation of crime, they are actionable in whatever mode their meaning may be expressed; they may be

Haines *vs.* Campbell.

by way of insinuation, interrogation, by ironical praise, or by any form of speech understood by the hearers. We think that the words charged in this third count are sufficient to maintain the *innuendo*.

In the fourth count the averment, *colloquium* and words charged are the same as in the third. The *innuendo* is thus set forth: "meaning thereby that the plaintiff's neighbors charged that he, the plaintiff, was guilty of the crime of maliciously and voluntarily burning the said barn of the said Witman." These words disparage the character of the plaintiff, and convey an imputation of crime, and must impose liability on the defendant for uttering them, unless there be some impunity for the repetition of slander. At one time, it was held on the authority of *Earl of Northampton's Case*, 12 *Coke*, 134, that if a person repeated a slander, and mentioned at the same time the name of the person from whom he heard it, he would have a good defence to an action brought against him. This doctrine has been very much questioned and criticised by eminent Judges, both in England and America, and has finally been entirely overthrown. In *McPherson vs. Daniels*, 10 *Barnewall & Cresswell*, 263, BAYLEY, Judge, said: "By repeating slander, a person, although he state at the time that he heard it from another, gives it a degree of credit; for the repetition of it, imports a degree of belief in the truth of the slander. If I hear another say A is a thief, and that B, though a person of bad character, told him so, I am induced to think, that the person who repeats it gives some credit to the statement. It seems to me, therefore, that a person cannot be justified in repeating slander, unless he *believes it to be true*. But that alone is not sufficient. I think it can only be repeated upon a *justifiable occasion*. Every publication of slanderous matter is *prima facie* a violation of the right which every individual has to his good name and reputation. The law, upon

grounds of public policy and convenience, permits under certain circumstances, the publication of slanderous matter, although it be injurious to another. But such act being *prima facie* wrongful, it lies upon the person charged with uttering slander, whether he were the first utterer or not, to show that he uttered it upon some *lawful occasion*. Upon the whole, I am of opinion that a man cannot by law justify the repetition of slander by merely naming the person who first uttered it; he must also shew that he repeated it on a justifiable occasion, and believed it to be true." And in the same case PARKE, Judge, said: "A man's reputation is entitled to the protection of the law, against those slanders which it considers to be injurious; and as every one who publishes such a slander injures that reputation, he is guilty of a wrongful act, and upon principle is liable in a civil action for any damage arising to another by reason of that wrongful act. I agree with what is said by Lord Chief Justice BEST in *De Crespigny vs. Wellesley:* 'because one man does an unlawful act to any person, another is not to be permitted to do a similar act to the same person. Wrong is not to be justified, or even excused, by wrong.' A man does a wrong by, and is therefore liable to an action for, every repetition of slander; and if that be so, is the repeating of the slander less a wrong because the person who repeats it is not the same who first uttered it?" In *Watkin vs. Hall, Law Reports,* 3 *Queen's Bench,* 396, the questions are thus stated by BLACKBURN, Judge: "The only questions are whether or not an action will lie for stating—upon an occasion which does not show the communication to be privileged—that there is a rumour upon the stock exchange that the plaintiff, who is a trader, was in insolvent circumstances and had failed; the defendant stating, not that the plaintiff was insolvent, but that there was a rumour to that effect; and whether it would be a jus-

Haines *vs.* Campbell.

tification to shew that the rumour did exist, and that the defendant had only repeated it, and stated at the time openly that it was only a rumour." And it was held that the action would lie. In *Waters vs. Jones,* 3 *Porter, (Alabama)*, 442, the words were: "It is the general opinion of the people in Jones' neighborhood that he burnt C's gin-house," and they were held to be actionable. In *Kenney vs. McLaughlin and Wife,* 5 *Gray*, 3, the result of the Court's opinion is thus reported: "A repetition of a slander already in circulation, without expressing any disbelief of it, or any purpose of inquiring as to the truth, though made without any design to extend its circulation or credit, or to cause the person to whom it is addressed to believe or suspect it to be true, is actionable." And a great many other cases may be cited to the same effect. A number of them are collected in the last edition of *Odgers on Libel and Slander, top pages* 124, 125, 126 and 127. *Vide* also *Folkard's Starkie on Slander, section* 318. The principle is well established that every repetition of a slander renders the speaker liable to an action. The circulation of scandal greatly multiplies and increases its potency for mischief. He who originally publishes a slander inflicts an injury on his neighbor; and he is of equal guilt and malevolence who assists in the propagation of it. The substance of the words, charged in the fourth count, is that the plaintiff's nearest neighbors believed him guilty of a heinous crime. Such words are in the highest degree defamatory, charging that in the opinion of those who ought to know him best, the plaintiff was legally liable to an infamous punishment.

The decision in *Simmons vs. Mitchell, Law Reports,* 6 *Appeal Cases*, 156, was much pressed upon us in the argument. It was held in that case that the words which were the subject of complaint meant that there was a case of suspicion, and suspicion only, against the

plaintiff. In the opinion of their Lordships of the Privy Council it is said: "It is to be observed that the plaintiff does not in any of his *innuendoes* declare that the words of which he complains were spoken with the intention of imputing to him a felony; that is to say, the crime of murder. The *innuendoes* do not purport to enlarge the meaning of the words, and if the words themselves convey only suspicion, the *innuendoes* do no more." It was not disputed that in point of law, words merely conveying suspicion would not sustain an action of slander.

The demurrers were properly overruled.

*Judgment affirmed.*

(Decided 9th April, 1891.)