## METROMEDIA, INC., ETC. *v.* DAVID H. HILLMAN ET AL.

[Misc. No. 5, September Term, 1978.]

*Decided May 8, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ., and ALAN M. WILNER, Associate Judge of the Court of Special Appeals, specially assigned.

*H. Thomas Howell,* with whom were *John H. Mudd* and *Semmes, Bowen & Semmes* on the brief, for appellant.

*Steven A. Michael,* with whom were *Sando & Michael* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

This case comes to us by certification from the United States District Court for the District of Maryland. Under Maryland Code (1974) § 12-601, Courts and Judicial Proceedings Article, jurisdiction is granted to this Court to "answer questions of law certified to it by . . . a United States District Court . . . if there is involved in any proceeding before the certifying court a question of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this state." Pursuant to that authority two questions have been certified to us:

> (1) In light of *Jacron Sales Co., Inc. v. Sindorf,* 276 Md. 580, 350 A. 2d 688 (1976), and *General Motors Corporation v. Piskor,* 277 Md. 165, 352 A. 2d 810 (1976), does Maryland law continue to recognize any distinction between libel *per se* and libel *per quod?*
>
> (2) If such a distinction is recognized, does Maryland law continue to require the pleading and proof of special damages in cases where extrinsic facts are necessary to show the libelous nature of the statement made by the defendant, that is, in cases of libel *per quod?*

We observe that by reason of *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A. 2d 688 (1976), much of the distinction or

difference between libel per se and libel per quod has in fact disappeared. Under Maryland principles of pleading the same rules continue to apply as to the nature of the libel. That is, if the libel is readily apparent as in the situation where one is called a thief, no explanation is necessary, but in the instances which previously would have been a libel per quod, the nature of the libel must be pleaded with the same particularity as formerly. Since nominal or presumed damages no longer exist, in all libel actions Maryland pleading principles require the same type of pleading as to damages as was formerly necessary in libel per quod.

To answer the certified questions it is not necessary in this instance to allude to the facts before the certifying court. It will be sufficient to say that Metromedia, Inc., etc., has been sued for libel by David H. Hillman et al. as a result of a television broadcast.

As we see it, for the purpose of answering the certified questions we have no need to involve ourselves in the controversy that has raged between certain scholars relative to libel per se and libel per quod. *See, e.g.,* Eldredge, *Variation on Libel Per Quod,* 25 Vand. L. Rev. 79 (1972); Eldredge, *The Spurious Rule of Libel Per Quod,* 79 Harv. L. Rev. 733 (1966); Murnaghan, *Ave Defamation, Atque Vale Libel and Slander,* 6 U. of Balt. L. Rev. 27 (1976); Murnaghan, *From Figment to Fiction to Philosophy — The Requirement of Proof of Damages in Libel Actions,* 22 Cath. U. L. Rev. 1 (1972); Prosser, *More Libel Per Quod,* 79 Harv. L. Rev. 1629 (1966); and Prosser, *Libel Per Quod,* 46 Va. L. Rev. 839 (1960).

In *M & S Furniture v. De Bartolo Corp.,* 249 Md. 540, 241 A. 2d 126 (1968), Judge Horney explained for the Court the difference between libel per se and libel per quod:

> The distinction is based on a rule of evidence and the difference between them lies in the proof of the resulting injury. In the case of words or conduct actionable *per se,* their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable

> only *per quod,* the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage. The cases in this state are collected in 14 M.L.E., Libel and Slander, § 11 [(1961)]. See also 33 Am. Jur., Libel and Slander, § 5 [(1941)]; 53 C.J.S., Libel and Slander, § 170 b, c [(1948)]. [*Id.* at 544.]

The origin of the distinction was explained by Judge Horney for the Court in *American Stores Co. v. Byrd,* 229 Md. 5, 181 A. 2d 333 (1962), although in that instance the reference was to slander and not libel:

> The historical distinction between slander *per se* and slander *per quod* is undoubtedly based on the theory that in words actionable *per se,* their injurious character is a fact of common notoriety, and necessarily import damages not requiring proof of special damages (cf. *Foley v. Hoffman,* 188 Md. 273 [, 52 A. 2d 476 (1947)]); while, if the words used are not defamatory *per se,* they must be explained by innuendo and colloquium (cf. *Walker v. D'Alesandro,* 212 Md. 163 [, 129 A. 2d 148 (1957)]). See *Odgers on Libel and Slander* (Am. Ed. by Bigelow), p. * * * 309.
>
> Consistently this Court has held that words which falsely charge a person with or impute to him the commission of a crime for which he is liable to be prosecuted and punished are actionable *per se.* See, for example, the early case of *Dorsey v. Whipps,* 8 Gill 457, 462 (1849), where, in quoting 1 *Starkie on Slander,* p. 43, it was said: " 'To impute any crime or misdemeanor, for which corporal punishment is to be inflicted, is actionable without proof of special damage.' " And see *Haines v. Campbell,* 74 Md. 158, 21 Atl. 702 (1891), where it was stated that if spoken words convey an implication of crime, they are actionable in whatever mode their meaning may be

expressed, that is, whether by way of interrogation, insinuation, ironic praise or any other form of speech understood by the hearers. See also *Wheatley v. Wallis,* 3 H. & J. 1 (1810); *Bonner v. Boyd,* 3 H. & J. 278 (1811); *Long v. Eakle,* 4 Md. 454 (1853); *Shockey v. McCauley,* 101 Md. 461, 61 Atl. 583 (1905). Other cases in this area are collected in 14 M.L.E., *Libel and Slander,* § 14 (Commission of Crime). [*Id.* at 12 and 13.]

For discussion of special damages see *Shafer v. Ahalt,* 48 Md. 171, 174 (1878); *Cheek v. J. B. G. Properties, Inc.,* 28 Md. App. 29, 32-33, 344 A. 2d 180 (1975); 1 J. Poe, *Pleading and Practice* § 174 (5th ed. Tiffany 1925); and 1 J. Chitty, *Treatise on Pleading* * 411 (16th Am. ed. Perkins 1876).

In *Jacron, supra,* Judge Levine reviewed for the Court the changes brought in the law of libel and slander by *New York Times Co. v. Sullivan,* 376 U. S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964); *Curtis Publishing Co. v. Butts,* 388 U. S. 130, 87 S. Ct. 1975, 18 L.Ed.2d 1094 (1967); *Rosenbloom v. Metromedia,* 403 U. S. 29, 91 S. Ct. 1811, 29 L.Ed.2d 296 (1971); and *Gertz v. Robert Welch, Inc.,* 418 U. S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974).[1] He said of those opinions:

> At common law, the only defenses available to a publisher of defamatory material were truth and the common law privileges. Then, in its landmark decision in *New York Times,* the Supreme Court held that in a state libel trial, a public official must establish "malice," defined as a knowing falsity or a reckless disregard for the truth, on the part of the publisher to recover damages for defamatory statements concerning the plaintiff's official conduct. The traditional defense of truth, the Court held, did not provide adequate protection to the First Amendment rights of the press.

---

[1]. For yet another development in the law of libel and slander, see the very recent case of Herbert v. Lando,    U. S.    , 99 S. Ct. 1635, 60 L.Ed.2d 1115 (1979). It has no bearing on this case, however.

Three years later, in *Curtis Publishing Co. v. Butts, supra,* another unanimous Court expanded the class of plaintiffs subject to the *New York Times* test to include "public figures." Although Mr. Justice Harlan wrote the opinion for the Court, a majority agreed with Mr. Chief Justice Warren's definition of a public figure, which included not only public officials but also those individuals who are "nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large." 388 U. S. at 164. The Chief Justice assumed that involvement in public issues or events itself guaranteed access to the means by which defamatory criticism might be controverted.

In *Rosenbloom v. Metromedia, supra,* in an opinion joined by only two other members of the Court, Mr. Justice Brennan appeared to extend the constitutional privilege enunciated in *New York Times* yet another step further by applying it to defamatory falsehoods if the statements concern matters of public or general interest, regardless of the status of the person defamed. The essence of the opinion is this:

> "If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety. . . ." 403 U. S. at 43. [*Id.* 276 Md. 584-86 (footnotes omitted).]

Judge Levine went on to say for this Court:

> Thus was the stage set for *Gertz.* There, the plaintiff was a Chicago attorney prosecuting a civil

action for the family of a youth who had been shot and killed by a police officer. The officer had previously been convicted of second degree murder in the incident, but the plaintiff had neither participated in the criminal proceeding nor discussed the officer with media representatives. Nevertheless, the defendant published an article characterizing the plaintiff as the "architect of the criminal prosecution" which it portrayed as part of a nationwide Communist conspiracy to discredit local law enforcement agencies. The article falsely accused the plaintiff of membership in Communist-front organizations and of having a criminal record. After a jury had awarded the plaintiff $50,000 in damages, the trial court, anticipating *Rosenbloom* and granting the defendant's motion for a judgment n.o.v., ruled that the *New York Times* standard should govern even though the plaintiff was neither a public official nor a public figure. On appeal, the United States Court of Appeals upheld the trial court on the ground that, regardless of whether the plaintiff was a public figure, the defamatory statements concerned an issue of significant public interest. *Gertz v. Robert Welch, Inc.,* 471 F. 2d 801 (7th Cir. 1972).

The Supreme Court, with a majority of five, held that the constitutional privilege articulated in *New York Times* does not extend to defamatory falsehoods concerning an individual who is neither a public official nor a public figure. Rather than expand the *New York Times* standard to falsehoods relating to private persons when made in connection with events of public interest, as the *Rosenbloom* plurality had done, the Court applied a number of restrictions to the law of libel designed to accommodate freedom of the press with the state's interest in protecting a private person's reputation. The Court held that in cases of defamation of private persons (1) the state may not impose liability without

> fault, but with that limitation may adopt any other standard of media liability, and (2) in cases where the *New York Times* test of knowing or reckless falsity is not met, the state may permit recovery for "actual injury" but not presumed or punitive damages. Such "actual injury" was not confined to out-of-pocket loss, but may include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 U. S. at 350. [*Id.* at 586-87.]

Since under *Gertz* we were no longer permitted to impose liability on the media without fault, as, *e.g.,* by permitting recovery of nominal damages for calling a person a thief, and since where the *New York Times* test of reckless falsity was not met, presumed or punitive damages were no longer permitted, it became necessary to frame new rules. We concluded that "applying the *Gertz* holding to non-media defendants and to slander as well as libel [would promote] consistency and simplicity in the law of defamation." *Id.* at 593. Accordingly, we held "that the rules announced in *Gertz* apply to cases of libel and slander alike brought against non-media defendants" and, thus, that "the principles of *Gertz* [were] applicable [in *Jacron*]." *Id.* at 594. It then became necessary that we adopt a standard by which potential liability might be measured. We held that henceforth in Maryland such cases would be judged by the standard of negligence now embodied in Restatement (Second) of Torts § 580B (1977):

> One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
>
> > (a) knows that the statement is false and that it defames the other,
> > (b) acts in reckless disregard of these matters, or

(c) acts negligently in failing to ascertain them.

See 276 Md. at 596-97. Thus, we said "that under the negligence standard ... truth is no longer an affirmative defense to be established by the defendant, but instead the burden of proving falsity rests upon the plaintiff, since, under this standard, he is already required to establish negligence with respect to such falsity." *Id.* at 597. We held "that proof of fault in cases of purely private defamation must meet the standard of the preponderance of the evidence. This is the quantum of proof ordinarily required in other types of actions for negligence, and is apt to be more readily understood by juries." *Id.* at 597.

*General Motors Corp. v. Piskor,* 277 Md. 165, 352 A. 2d 810 (1976), and *IBEW, Local 1805 v. Mayo,* 281 Md. 475, 379 A. 2d 1223 (1977), applied the principles of *Jacron,* but in no way altered them.

*Jacron* was a non-media case while this is a media case. However, since we adopted a single standard for media and non-media cases in *Jacron,* it is obvious that it is no longer possible in Maryland to recover damages by simply alleging a libel per se. It is true that in *M & S Furniture, supra,* 249 Md. at 544, Judge Horney referred for the Court to the difference between libel per se and libel per quod as being "based on a rule of evidence" and referred to "the difference between them [as being] in the proof of the resulting injury." However, proof must come in accordance with the allegations which have been made in the declaration. In fact, the Court there said, "In the case of words or conduct actionable only *per quod,* the injurious effect must be established by *allegations* and proof of special damage ...." (Emphasis added.) Therefore, it seems to us that to provide any kind of a definitive answer to the question here posed one must give consideration to the purpose of pleadings.

In *Pearce v. Watkins,* 68 Md. 534, 539, 13 A. 376 (1888), the Court struck down a declaration, saying, "It gives no notice what the defendants were expected to defend, and might expect to be proved against them." In *Gent v. Cole,* 38 Md.

110 (1873), Judge Alvey quoted for the Court from *Rex v. Lyme Regis,* 1 Doug. 149 (1779), saying:

> [I]t is one of the first principles of pleading, *that facts should be stated,* "for the purpose of informing the court, whose duty it is to declare the *law* arising upon those facts, and to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it." This essential and fundamental principle, which is incorporated into our simplified system of pleading, (Code, Art. 75, sec. 2,) has certainly been ignored in framing the counts in the present declaration. [*Id.* at 113 (emphasis in original).]

A declaration in Maryland is required by Maryland Rule 340 to comply with Rule 301. The latter rule specifies that a pleading shall contain "a clear statement of the facts necessary to constitute a cause of action . . . ." In *Richardson v. Boato,* 207 Md. 301, 114 A. 2d 49 (1955), Judge Hammond observed for the Court:

> One may not recover in tort unless the defendant has violated a legal right of the plaintiff which has caused him injury. In the invasions of person or property for which trespass was the remedy, injury was presumed from the violation of the absolute legal right. In the deceit and negligence cases, actual injury had to be shown to make an actionable wrong. [*Id.* at 304.]

After further discussion of these principles and their application, the Court said, "In the case before us, the negligence of the appellee gave no right of action to the appellant unless that negligence injured or harmed her." *Id.* at 306. This theory is explained in 74 Am. Jur. 2d *Torts* § 7 (1974):

> Legal damage resulting from some injury to the right of another or from the breach of a duty owing to such other has been regarded as a necessary element of a cause of action in his favor. It is basic

tort law that wrong without damage does not constitute a good cause of action. However, a direct invasion of a legal right imports damage, and whenever there is a wrongful invasion of a clear legal right, the law infers or presumes damage sufficient to support an action. In such case, the injury is regarded as the gist of the action.

The general rule is that a person injured by the commission of a tort is entitled to actual pecuniary compensation for the injury sustained, and except where the circumstances are such as to warrant the allowance of exemplary damages, he is limited to such compensation. Where a legal right is to be vindicated against an invasion that has produced no actual loss of any kind, the damages recoverable are nominal. But it has been said that there can be no recovery in tort where the damages are unascertainable. Thus, it has been held that since it is logically impossible to measure the difference between life with defects and the utter void of nonexistence, there can be no recovery for wrongful birth. [*Id.* at 625-26 (footnotes omitted).]

*Accord* 86 C.J.S. *Torts* §§ 21 and 22 (1954).

It is certain that under *Jacron* in Maryland one no longer may recover on a declaration which merely alleges that a person publicly called an individual a thief, whether orally or in writing. Nor could one recover by simply alleging that one negligently (in the terms of the Restatement) called an individual a thief. More is necessary. We see the question here as being not so much a distinction between libel per se and libel per quod as a question of what is necessary to put a defendant on notice, what will satisfy our pleading requirements. We would not presume to tell the United States District Court how a pleading should be framed under the Federal Rules of Civil Procedure. Suffice it to say the effect in Maryland of *Gertz* and *Jacron* is that in order for a

declaration alleging libel in a Maryland court to withstand the test of a demurrer it must allege:

(1) a false and defamatory communication

    a - which the maker knows is false and knows that it defames the other, or

    b - that the maker has acted in reckless disregard of these matters, or

    c - that the maker has acted negligently in failing to ascertain them, and

(2) that the statement was one which appears on its face to be defamatory, as, *e.g.,* a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

(3) allegations of damages with some particularity, since *Gertz* and *Jacron* forbid presumed damages.

In other words, as to (3) in Maryland a pleading to be sufficient must show a basis for believing that the plaintiff has sustained actual injury as defined in *Jacron.* As Judge Hammond noted in *Richardson, supra,* 207 Md. at 304, in some types of action injury was presumed from the violation of an absolute legal right while in others *actual* injury has to be shown to make a wrong actionable. In the words of the Court in *Garonzik v. Balto. Fed. S. & L. Ass'n,* 225 Md. 322, 323, 170 A. 2d 219 (1961), a declaration must indicate more "than extravagant and diffuse conclusions of the pleader."

In sum, the only distinction remaining in Maryland between a libel per se and a libel per quod is that to recover the plaintiff must first show that the publication is defamatory. Where the words themselves *impute the defamatory character, no innuendo*—no allegation or proof of extrinsic facts—is necessary; but otherwise, it is. This is both a pleading rule and an evidentiary requirement. Where extrinsic facts must be shown in order to establish the defamatory character of the

words sued upon, the omission to plead them makes the complaint demurrable for failure to state a cause of action. Failure to prove them would justify a directed verdict.

*Questions of law answered as herein set forth; appellees to pay the costs.*