## MORNING JOURNAL ASS'N *v.* RUTHERFORD.

*(Circuit Court of Appeals, Second Circuit. July 20, 1892.)*

No. 53.

1. LIBEL.—EXEMPLARY DAMAGES—NEWSPAPER ARTICLE.

A libelous article published in a newspaper stated, substantially, that plaintiff had eloped with the wife of a friend; that the intimacy existing between them had excited comment where the several parties resided, and, when they were found to be missing, "tongues wagged freely;" that a dispatch had been received by the husband stating that his wife and plaintiff had been seen together in a certain city. The article was clipped from another paper, and published without inquiry as to its authenticity. *Held*, that the court properly instructed the jury that, if they believed the article was wantonly published without inquiry or justifiable motive, or under circumstances of gross negligence, it was their right to award, besides actual damages, such punitive or exemplary damages as the facts warranted; and it was not error to refuse a charge that "where there is no actual or express malice, and no claim that plaintiff had suffered any special damages, the jury may award the plaintiff nominal damages." 47 Fed. Rep. 487, affirmed.

2. APPEAL—REVIEW—EXCESSIVE VERDICT—FEDERAL COURTS.

An excessive verdict in an action for libel cannot be corrected by the federal appellate courts on writ of error, where the jury has been properly instructed as to the rule of damages.

3. APPEALABLE ORDERS—DENIAL OF NEW TRIAL.

A decision upon a motion for a new trial is not reviewable by a federal appellate court.

Error to the Circuit Court of the United States for the Southern District of New York.

Action by Edward C. Rutherford against the Morning Journal Association to recover damages for an alleged libel. The jury rendered a verdict for plaintiff in the sum of $1,000. A motion for a new trial was denied. 47 Fed. Rep. 487. Defendant appeals. Affirmed.

Statement by LACOMBE, Circuit Judge:

The plaintiff, a resident of Toronto, Canada, came to New York city on the 8th of June 1890, accompanied by the wife of a friend of his, who resided in Toronto. When the train arrived, they were met at the station by the husband. All the parties were people of high respectability, and were, apparently, intimate friends who had arranged for a visit to New York together. While they were staying at the Hotel Brunswick, and on the 14th of June, there appeared in the newspaper published by plaintiff in error a communication, under the heading "Eloped to New York; Wife of a Wealthy Toronto Merchant 'Skips Out,'"—which purported to have been sent to it by its special correspondent at Toronto, the day before. The communication stated, in substance, that the defendant in error had eloped with the lady; that for some time the intimacy between the two had excited comment in Toronto, and, when they were found to be missing, "tongues wagged freely;" that a dispatch from New York city had been received by the husband, stating that his wife and defendant in error had been seen there, and that he at once started for New York. No special correspondent in Toronto had sent any such communication to the plaintiff in error. One Cronin, a reporter for a Toronto newspaper, with no more information on the subject than "talk which

was going on about it in the office" of his paper, had, without investigating into the facts, sent the communication to a Chicago newspaper, which published it. The article, as published in the Chicago newspaper, was forwarded by a news agency to the plaintiff in error. Just prior to its receipt, a similar article was published in the New York Evening Sun. The telegraph editor of the plaintiff in error cut out the article from the Sun for publication in his own paper, and inserted it therein as an item of news, without making any inquiry as to its authenticity.

Defendant in error brought suit in the United States circuit court for the southern district of New York, laying his damages at $10,000. The action was tried May 12, 1891, before Judge WALLACE and a jury, and a verdict rendered for $4,000. A motion for a new trial was made and denied, judgment was duly entered, a bill of exceptions settled and filed, and writ of error allowed.

*John R. Dos Passos*, for plaintiff in error.

*James D. Fessenden*, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff in error, upon the argument in this court, criticised certain statements in the charge, to which, on the trial, he made no objection and which are covered by no exception. These portions of the charge are not, therefore, before this court for review; they would not be, even under a general exception to the whole charge, (Rule 10 U. S. Cir. Ct. App. 2d Ct.,) nor was any such general exception taken. It is elementary that a party who thinks himself aggrieved by a charge to the jury can be heard in criticism only of so much of it as he objected to at the time. The record discloses three exceptions to the charge, as follows:

*First.* To a refusal to charge, as requested, that, "there being no express or actual malice on defendant's part in publishing the libel, the jury should not award exemplary or punitive damages." *Second.* To a refusal to charge, as requested, that, "where there is no actual or express malice, and no claim that the plaintiff has suffered any special damages, the jury may award the plaintiff nominal damages." *Third.* To a charge that the jury might give a verdict for punitive or exemplary damages.

The jury were charged that "they would not be justified in finding, from the evidence in the case, that there was any personal ill will towards the plaintiff which inspired the publication of the articles," and that "there was no evidence authorizing the jury to find that there was any actual or express malice on defendant's part in publishing the article;" that the law implies malice from the publication of a false and defamatory article, without probable cause; that, under the circumstances, plaintiff was entitled to such damages as he had sustained in his feelings and his reputation by reason of the publication of the libelous article; that he was entitled to be indemnified for the injury to his feelings. The court further charged that, if the jury were satisfied that the article was wantonly published without inquiry, without justifiable motive, or under circumstances of gross negligence, it was within their province to

award, besides actual damages, such sum as they might think, upon all the facts, the case deserved for punitive or exemplary damages.

So far as the subject-matter of the second exception, *supra*, is concerned, the charge was as favorable as the plaintiff in error was entitled to. The jury was distinctly told that defendant in error was entitled to indemnification for injury to his feelings and reputation, and that, only if they were satisfied that the publication was wanton and grossly negligent, were they to give him anything more. Neither the character of the libel nor the circumstances of its publication were such as to require the court to intimate to the jury that nominal damages were a sufficient indemnity for the assault upon his reputation and the injury to his feelings, and such an intimation is manifestly what the request to charge was devised to secure.

The other two exceptions, *supra*, are unsound. The charge correctly instructed the jury as to the law of the case. In actions for libel, juries are authorized to give such exemplary damages as the circumstances require, when the evidence shows that the publication was "the result of that reckless indifference to the rights of others which is equivalent to the intentional violation of them," (*Railroad Co.* v. *Arms*, 91 U. S. 489;) or, as it is elsewhere expressed, "when the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations," (*Railroad Co.* v. *Quigley*, 21 How. 213.) There was sufficient in the case to warrant the jury in finding that the action of the plaintiff in error exhibited such reckless indifference to the rights of others. For the publication of its defamatory article—a bit of spicy gossip dealing with the domestic infelicities of private persons—there was no excusable motive, and to publish it without making any effort to verify its truth was a piece of reprehensible negligence which may be fairly characterized as wanton. The story which the plaintiff in error spread broadcast throughout the community was one calculated most cruelly to outrage the feelings of any honest woman. The mental anguish which would be experienced by a loyal wife who saw herself paraded in the public press as an adulteress might well be assumed to be sufficiently acute to induce any decent person to verify befo. repeating such a story. But this plaintiff in error made no effort so to do. It published the story as if it were of its own special procurement,—the result of investigations made in its own behalf; in reality, reprinting the gossip just as it found it. "On seeing the article in the *Sun*, or receiving it from the United Press Association," says the editor in his testimony, "we were not supposed to make any inquiry as to the truth of it, and I did not make any." If this does not evidence a "reckless indifference to the rights of others, which is equivalent to an intentional violation of them," it is somewhat difficult to conceive what will.

It is urged, on behalf of the plaintiff in error, that it would be a physical impossibility for a newspaper to send an agent to every place where events are transpiring to ascertain by personal examination the exact facts, and that, if such a rule were insisted upon, "a paper could not give us all which we have a right to hear of the current events of the

day." *Edwards* v. *Kansas City Times Co.*, 32 Fed. Rep. 815. That the public has such a right to be informed as to the private life of every individual, as to the domestic affairs of every family, as to the happiness or infelicity which may characterize every household, as will warrant the proprietors of newspapers who cater to its wants in publishing any falsehood they may think interesting to their readers, without any investigation as to its truth, is a proposition, however, to which this court is not prepared to assent. Proprietors of newspapers, no doubt, know what current events of the day the public wishes to hear, and may find it desirable to repeat such spicy personal gossip as they may find in the columns of their contemporaries, or may hear from others, but they must at least exercise reasonable care that what they publish *is* the narrative of a current event, and not a libelous falsehood; for it is only as the report of a current event that newspaper or public have any concern with it whatever. What proportion of the columns of a newspaper shall be devoted to reports of illicit relations is a matter between itself and its readers, to be settled by the community in which it circulates, and individuals who offend against morality and violate the laws of society may have no just cause to complain if the sin which was committed in a corner is proclaimed from the house tops; but whosoever is void of offense is entitled to insist upon the protection the law gives him, that no story of his private life, however racy may be its details, shall be published with reckless indifference to his rights. The right to a reputation unsmirched by slanderous tongue or libelous pen is one which courts hold sacred; and when the publisher of a libel urges, as his sole defense, that it is the custom of his paper to print such stories as these, whenever they have appeared in the columns of another paper, without any inquiry as to their truth, he manifests such complete indifference to another's rights— such reckless unconcern as to the mental anguish he may cause—as will warrant a jury in finding him guilty of wanton negligence.

The plaintiff in error excepted to the refusal of the trial judge to set aside the verdict as excessive upon a motion for a new trial, and also contended that this court should do so on the ground that the record showed that the verdict was excessive. A decision upon a motion for a new trial, however, is not the subject of review in a federal appellate court, (*Laber* v. *Cooper*, 7 Wall. 565; *Railway Co.* v. *Heck*, 102 U. S. 120, and cases therein cited;) nor, when the proper rule for the computation of damages has been given to the jury, can an excessive verdict be corrected in the federal courts upon a writ of error, (*Railroad Co.* v. *Winter's Adm'r*, 143 U. S. 60, 12 Sup. Ct. Rep. 356; *Hogg* v. *Emerson*, 11 How. 587.) This statement of the well-settled rule of practice, however, is not to be taken as an intimation that, in the opinion of this court, there is anything in the record to show that the verdict in this case was excessive.