# ABRAM H. SHOCKEY *vs.* JACOB S. McCAULEY.

*Slander—Words Actionable per se—Punitive Damages—Presumption of Malice—Evidence of Provocation in Mitigation of Damages.*

It is actionable *per se* to say of one that "he stole them pulleys."

In an action of slander it is within the discretion of the jury to award punitive damages, when the words are actionable in themselves and there is no evidence rebutting the presumption that they were uttered with malice.

Where the plaintiff was a tenant on defendant's farm, and the defendant said to him, in the presence of others, that he had stolen pulleys and a rope, and there is no proof that the words were uttered with reference to permanent fixtures in the barn, not subject to larceny because a part of the real estate, the trial Court properly refused to instruct the jury that if they find the words were spoken solely with reference to the removal of pulleys and ropes from the defendant's barn, and were not intended by him and were not understood by the by-standers to charge the plaintiff with committing felony, then the plaintiff is not entitled to recover.

The defendant in an action of slander may show in mitigation of damages that the words were uttered in the heat of passion or under excitement provoked by the plaintiff, but evidence of defendant's anger or excitement, not the result of plaintiff's conduct, is not admissible.

Appeal from the Circuit Court for Carroll County (JONES, C. J., and THOMAS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*J. Clarence Lane* and *C. A. Little,* for the appellant.

*Jas. A. C. Bond* and *Chas. D. Wagaman* (with whom was *Frank G. Wagaman* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This is an action of slander, brought by the appellee against the appellant, for words spoken of the latter by the former.

The words alleged to have been spoken are, "he (meaning

the appellee) stole them pulleys;" "he stole them pulleys and trip rope;" and "he stole the pulleys and rope."

There is no inducement showing the connection in which the words were used; nor *innuendo* or *colloquium*, set out in the declaration.

The plea was the general issue. Judgment was for the appellee and the defendant has appealed.

There can be no dispute that the words set out in the *narr.*, according to their usual meaning, are actionable *per se*. Unexplained, they import that the appellee was guilty of larceny. The first prayer of the appellee was therefore properly granted.

Exception was taken by the appellant to the granting of the appellee's third prayer, by which the jury was instructed that if they found for the appellee they were at liberty in their discretion to award punitive as well as compensatory damages. It is difficult to assign any substantial reasen why it should not have been granted. If the words were uttered in the presence of other persons they are actionable *per se*, and carry with them the legal imputation of malice. *Long* v. *Eakel*, 4 Md. 458.

There was no evidence tending to rebut this imputation. This Court in *Fresh* v. *Cutter*, 74 Md. 95, referred to the case of *Padgett* v. *Sweeting*, 65 Md. 404, where an instruction like the one here was approved. It there said: "Under the conditions in Padgett's case the instructions were proper, but would not be in a case when there was evidence which tended to show that the libel was honestly made." *Coffin* v. *Brown*, 94 Md. 195.

The appellant offered four prayers, of which the first was conceded, and the second, third and fourth were rejected. The second was, that if the jury find the words were spoken, "solely with reference to the removal of the pulleys and ropes from the defendant's barn, and were not intended by the defendant, and were not understood by the by-standers to charge the plaintiff with committing felony, then the plaintiff is not entitled to recover more than nominal damages." The fourth prayer was that if the jury found that the words were spoken

solely with reference to the pulleys and ropes belonging to the barn, and were not intended by the defendant and not understood by the by-standers to charge the plaintiff with having committed a felony or other crime punishable corporally, the plaintiff was not entitled to recover at all.

The facts of the case as disclosed by the evidence contained in the record, show that the appellee was a tenant of the appellant, and had been notified by the latter to leave the farm in March. On the thirty-first of that month, when the appellee was getting ready to leave the farm on the following day, the appellant and his brother with one other man were at the "farm house, to collect a bill, for ropes, pulleys and hay." The parties had previously had "considerable trouble" and "several law suits before magistrates." The appellee asked to see the bill and declined to pay until it was shown him, but the appellant refused to permit him to look at it. That the appellant wanted the appellee to step outside, and said if the appellee would not come out he would come in. The appellee told him not to come in and put his foot against the door to prevent him and those with him from coming in, "and said if they come in he would hit them. Defendant stepped up on door and the appellee stepped back and picked up a window blind roll." The appellant then said "don't talk to a fool, come on we will make him pay for it, &c." The appellant did some cursing, and after quarreling started off, saying as he went, in the hearing of the others, "Jake stole them ropes and pulleys," and his brother Samuel said, "Yes, he did." The appellant testified that the bill contained a charge for "ropes and pulleys," belonging to the "hay-fixtures" in the barn. There was also evidence that they were "fast property." There was no explanation as to what was meant by "fast property." There was no proof that the words were uttered solely with reference to the hay-fork and pulleys, while attached to the barn, or that anything was said from which the by-standers could or did so understand them. Nor is there anything to show that the bill was read, or that the by-standers knew it included a charge for the hay-fork.

The only fact that seems to point that way, was the remark of his brother Samuel, but as to that also it does not appear that he had reference to the fork that was in the barn. Hay-forks are detachable articles, they are separated from the barn when not in use, by simply unhooking the pulley. If it be conceded that the appellant had special reference to the pulleys and ropes that belonged to this barn, there is nothing to show that the ropes and pulleys at the time they were removed, were affixed to the building, so that it was not possible for the by-standers to know that they were not then the subject of larceny. We do not mean to decide that a hay-fork as ordinarily used, cannot be the subject of larceny; what we do mean to be understood as saying, is, that according to the testimony in this record, the hay-fork and pulleys and ropes must be regarded as goods and chattels and not as fixtures, there being no evidence, to show that they were anything else than goods and chattels; that being so the words, in this case, must be taken to be actionable *per sc.* Had circumstances been proved, sufficient to show that they were not intended to charge the appellee with a felony, another question would have been presented, than is now before us. *Fawcett* v. *Clark,* 48 Md. 494–506; *Garrett* v. *Dickinson,* 19 Md. 447.

The defendant's third prayer is to the effect, that if "the slanderous words were uttered under the influence of passion or excitement or under circumstances of great provocation" such facts could be considered in mitigation of damages, was rejected. The jury was not required to find in addition, that the passion and excitement was produced by the immediate provocation of the appellee. It has frequently been held that the jury may, in estimating damages in cases of slander, take into account the excitement wrongfully provoked by the plaintiff. *Newell on Slander and Libel* (2 ed.), 907; *Thomas* v. *Fischer,* 71 Ill. 576; *McClintock* v. *Crick,* 4 Iowa, 453; *Moore* v. *Clay,* 24 Ala. 235.

It seems to be entirely reasonable to permit the defendant in a suit for slander or libel to offer evidence of provocation created by the improper conduct of the plaintiff; as CHAN-

CELLOR WALWORTH said in *Maynard* v. *Beardsley*, 7 Wendell, 564, "the law makes allowances for the infirmities of human nature." The weight of authority seems to be, that the defendant may show in mitigation of damages that the words were uttered in heat of passion or under great excitement, whenever such condition has been caused by the wrongful and proximate act of the plaintiff. 18 *E. & A. Enc. of Law*, 1109.

In *Watts* v. *Frazer*, 7 Car. & Payne, 369, the defendant was allowed to offer evidence showing provocation, and this Court in *Boteler* v. *Bell*, 1 Md. 173, referring to that case, said there was a vast deal of good sense in the view, that "a man who indulges in slanderous language towards another, when he has been provoked to it, by a long series of abuse, is less culpable in the eye of the law and of morals, than he, who from a fiendish dislike to his fellow man, or from a spirit of idle gossip, invents slander against his neighbor." But there are no authorities that go so far as to support the contention that any passion or excitement, or provocation, no matter how or by whom caused, can be given to the jury, and no sound reasons can be assigned for so holding. Certainly passion or provocation created by causes for which the plaintiff is not responsible, should not furnish a mitigation of the grave offense of maliciously slandering the character of another.

Finding no error, the judgment will be affirmed.

*Judgment affirmed.*

(Decided June 20th, 1905,)