# RUSSELL *v.* WASHINGTON POST COMPANY.*

### SLANDER AND LIBEL; EVIDENCE; PUNITIVE DAMAGES.

1. In an action of libel against a newspaper for the publication of an alleged libelous article, in which action the plaintiff, in his declaration, claims damages for injuries resulting to him as a minister of the gospel, editor, and publisher or religious papers and author of pamphlets and books from which he derived an income, evidence by the plaintiff is admissible, showing the size of his congregation, the circulation of the monthly journal of which he is the editor, what books he is the author of, and their circulation, and that he had been deprived of certain emoluments received from the sale of such books; and it is error for the trial court to confine the plaintiff to proof that his journal "has a wide circulation all over the world," and that he is the "author of several books."

2. Punitive damages may be allowed, where the publication of a libel was prompted by actual malice, or where the defendant acted with reckless or careless indifference to the rights and feelings of the party libeled; so that, where a newspaper publishes an article, libelous *per se*, regarding a minister of the gospel who is the defendant in a divorce suit, and the managing editor of the newspaper admits that, contrary to the statements in the article, reports of the divorce suit reached him regularly; that he took no steps to obtain a correct story and important details; and that, before the article was published, he knew the subject of it had denied his wife's charges,—punitive damages may be recovered against the newspaper proprietor.

3. A newspaper article is libelous *per se*, and not privileged, where the article, without giving the source of the newspaper's information, states positively that the plaintiff, a minister of the gospel, was guilty of scandalous and grossly improper conduct, which, if true, would justly bring him into contempt and ridicule, and discredit him in his ministerial work; does not confine itself to comment and criticism of

---

*\*Libel and Slander.*—For cases as to liability of newspaper proprietor for libel published, where this was done without his knowledge or consent, see note to *State* v. *Mason*, 26 L.R.A. 779.

his acts as a public man, or of his public life, but attacks his private life and character, and falsely asserts that he has committed certain acts of an immoral nature in his private life. (Citing *Washington Times Co.* v. *Downey*, 26 App. D. C. 265.)

No. 1781. Submitted February 6, 1908. Decided May 5, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict for nominal damages, in an action of libel.                    *Reversed.*

The facts are stated in the opinion.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellant.

*Mr. Chapin Brown, Mr. Charles A. Douglass,* and *Mr. John P. Earnest* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Plaintiff, Charles T. Russell, seeks in this action to recover for an alleged libel by defendant, The Washington Post Company, in publishing in its editorial column remarks which, in substance, stated that plaintiff was guilty of scandalous and grossly improper conduct with his lady parishioners and particularly with one Rose Ball. The article is set forth in the margin.* Defendant pleaded general issue, and the jury returned a verdict for plaintiff in the sum of $1.

---

*"The Rev. Jellyfish Russell.

"We seem to have lost the trail of that Pittsburg divorce suit in which the Rev. Charles T. Russell has been figuring as defendant. The reports do not reach us as regularly as we could wish. We have missed a great many important details, therefore, and, indeed, we now fear that the straight story, complete from first to last, will never come our way.

"This is to be regretted on general grounds, and then particularly because the chronicle began so entertainingly and with such promise of useful revelation as the facts developed. When the Rev. Charles T. Russell

Plaintiff prosecutes this appeal because of alleged error in the admission or exclusion of evidence, and in making or refusing certain charges to the jury:

1. Exclusion of evidence offered by plaintiff as to the size of his congregation, the circulation of his journal, and the number and circulation of his books.

---

made the opening statement in his own defense, he riveted the attention of the entire reading public. 'I am like a jellyfish,' said the reverend culprit; 'I float all around and I touch this one and that one, and, if they respond, I embrace them.' Who will deny that this alluring overture opens many vistas to the disciples of physical research? The Rev. Russell is the founder of a new faith. He calls his congregation the 'Russellites.' He doesn't believe there is any hell except right here on earth, and this doctrine he preaches to a very zealous and devoted congregation. We gather, too, that he monopolizes the jellyfish business in his capacity as head of the church. He floats around among the faithful, touching them here and there. Those who respond he promptly embraces. When they don't respond, that is, presumably, his idea of hell.

"As we have already explained, the story has not come to us consecutively. It happens, therefore, that we have been compelled to put two and two together. The Rev. Russell says he's like a jellyfish; that he floats about, touching his lady parishioners whenever he gets near enough, and that, when they 'respond,'—whatever that may mean,—he embraces. He adds that the only hell he knows of or believes in is a strictly earthly hell; from which we conclude that he finds devils only among those who do not 'respond' when touched. The particular case which precipitated the divorce suit appears not to have been at all hellish. In that instance the jellyfish touched one Rose Ball, who must have 'responded' very promptly, since Mrs. Marie Frances Russell, the plaintiff in the divorce suit, was an eyewitness to the embrace which followed.

"But, upon the whole, this new faith, 'the Russellite,' seems to possess a great many of the elements of popularity. Sooner or later, of course, the higher officials of the church, and perhaps a few of the more adventurous gentlemen of the congregation, may conclude that with a little practice they might become pretty active jellyfish themselves, and that would inevitably lead to dissension. For the present, however, we are inclined to mark up the Russellite propadanda as a winner. Of course, it's a pity that the jellyfish's wife came on the scene just at the critical moment. Those accidents will occur, however, even in the most carefully arranged schemes of exaltation. The great truth remains that the Rev. Jellyfish Russell has opened up a mighty attractive pathway to the higher life, and that, barring unforeseen catastrophes, he will get there with enviable frequency."

In his declaration plaintiff alleged, among other things, that he "was in good standing and repute in the ministry of the Gospel, in which calling or profession, and in the business of writing, editing, and publishing religious papers, pamphlets, and books having large circulation and sale in the United States and foreign countries, and from which sales an income was and is derived with certain divers emoluments and gains. * * * Yet the defendant, well knowing the premises, but contriving to deprive the plaintiff of his good name, reputation, and professional and *business* standing, and to bring him into scandal and disrepute among his friends, neighbors, associates, acquaintances, *patrons, customers,* and with the public, and to injure him in his said calling, profession, *occupation, business, and pursuits,*" published the article complained of. "By reason of said publication, the plaintiff has been greatly hurt and injured in his good name, fame, and reputation, and has been brought into disgrace and disrepute among divers neighbors, friends, associates, acquaintances, *patrons, customers,* and among divers other persons, and before the public generally, and has been greatly injured in his said calling, profession, and business as a minister of the Gospel, *in writing, editing, and publishing religious papers, pamphlets, and books,*" etc. To support these allegations, plaintiff offered to show the size of his congregation, the circulation of a monthly journal of which plaintiff was editor, what books plaintiff was author of, and their circulation; and that he has been deprived of certain emoluments received from a sale of these books. Plaintiff was allowed to show that the journal has "a wide circulation all over the world," and that he was "the author of several books;" but the learned court sustained objections to the offers of other evidence upon these points, upon the ground that the plaintiff's counsel had gone into them as far as he had the right to go. We think this was error.

Under the allegations in the declaration, plaintiff was entitled to go into the question of damages to him as a minister, writer, and author. *Moore* v. *Francis,* 121 N. Y. 199, 8 L.R.A. 214, 18 Am. St. Rep. 810, 23 N. E. 1127; *Chiatovich* v. *Hanchett,*

88 Fed. 873. There is nothing to the contrary in *Smedley* v. *Soule,* 125 Mich. 192, 84 N. W. 63, or in the other cases cited by the defendant, for the pleadings there were quite different from the declaration in this case. In order to show these damages, the extent of plaintiff's writings and their circulation, and the size of his congregation, were relevant and proper evidence. *Turner* v. *Hearst,* 115 Cal. 394, 47 Pac. 129; *Mallory* v. *Pioneer-Press Co.* 34 Minn. 521, 26 N. W. 904; *Klumph* v. *Dunn,* 66 Pa. 141, 5 Am. Rep. 355. The evidence admitted upon these points was very indefinite and insufficient as a basis for award of damages. We think plaintiff was deprived of a substantial right by the exclusion of the evidence offered.

2. The trial court held that the evidence was insufficient to entitle plaintiff to have the question of exemplary damages submitted to the jury. We think there was error in this. The managing editor of defendant testified that the editorial was based upon information contained in a news item published in defendant's paper and a number of New York and Pittsburg papers; that, contrary to the statement in the editorial, reports of the divorce suit reached defendant regularly; that he took no steps to acquire a straight story and important details; that he had seen, before publishing the editorial, an article in the Pittsburg Gazette containing headlines, "Russell denies wife's charges," the opening paragraph of which was: "Pastor C. T. Russell, of the Bible House, Allegany, denied all his wife's charges in her suit for divorce;" that, at the time of publishing editorial, he knew plaintiff had testified in a general denial of the charges; and that he could have informed himself before the article in the paper. Punitive damages may be allowed where publication of a libel was prompted by actual malice, or where the defendant acted with recklessness or careless indifference to the rights and feelings of the party libeled. While, in the circumstances of this case, the submission of this question to the jury might not have made any difference in its verdict, we nevertheless are of the opinion that the character of the published article and the evidence relating to the publication entitle the plaintiff to have the jury consider the question. *Morning*

*Journal Asso.* v. *Rutherford,* 16 L.R.A. 803, 2 C. C. A. 354, 1 U. S. App. 296, 51 Fed. 513; *Cooper* v. *Sun Printing & Pub. Asso.* 57 Fed. 566; *Times Pub. Co.* v. *Carlisle,* 36 C. C. A. 475, 94 Fed. 762; *Gambrill* v. *Schooley,* 93 Md. 64, 52 L.R. A. 87, 86 Am. St. Rep. 414, 48 Atl. 730; *Shockey* v. *Mc-Cauley,* 101 Md. 461, 61 Atl. 583; *Benton* v. *State,* 59 N. J. L. 551, 36 Atl. 1041; *Morrison* v. *Press Pub. Co.* 27 Jones & S. 216, 14 N. Y. Supp. 131; *Clark* v. *North American Co.* 203 Pa. 346, 53 Atl. 237.

3. The remaining assigned errors that we need notice relate to the defense which, as stated by counsel for appellee, was that "the words, the editorial article, were privileged by reason of the said words (editorial article) being fair and bona fide comment." If we had not already found reversible error, we should not think it proper to consider these alleged errors, as we think counsel for appellant waived any right to challenge the rulings by making certain concessions in respect to such defense during the preparation of the court's charge to the jury. But, as the question raised by these assignments of error are certain to arise upon retrial of the case, we feel that we should not send the case back without further notice of them.

We think the defense of privilege is not applicable to the article published by the defendant. The article is unquestionably libelous *per se. Washington Times Co.* v. *Downey,* 26 App. D. C. 263. Without stating the sources of its information, defendant, upon its own responsibility, makes a positive statement in this article that plaintiff is guilty of scandalous and grossly improper conduct, which, if true, would justly bring upon him the contempt and ridicule of society, and utterly discredit and destroy him in his ministerial work. The article attacks the private life and private character of plaintiff. It is not confined to comment and criticism on his acts as a public man or his public life, but, so far as this record discloses, falsely asserts that he has committed certain acts of an immoral nature in his private life. The rule is well established by high authority that "charges imputing a criminal offense, or moral delinquency to a public officer, cannot, if false, be privileged, though made in

good faith, and this though the charge relates to an act of the officer in the discharge of his official duties," and that, "while any citizen has the right to publish to the general public a fair comment and criticism on matters of public concern, he will not, as a general rule, be protected if he goes further and publishes false statements of a defamatory character."   18 Am. & Eng. Enc. Law, 2d ed. p. 1041, and cases there cited.

We will refer to a few of the cases bearing upon this point.

*Hamilton* v. *Eno,* 81 N. Y. 116, was an action for libel in publishing a statement accusing a public officer of accepting money from an interested party for making a statement which would influence a municipality to purchase that party's products.   The defense of privilege was interposed.   The court was unanimous in holding that the defense of privilege did not apply, and said, in part: "One may in good faith publish the truth concerning a public officer; but, if he states that which is false and aspersive, he is liable therefor, however good his motives.   A person in public office is no less to be protected than one who is a candidate for public office; and the law of libel must be the same in each case.   *   *   *   Yet it is the law of this state that to accuse a candidate for public office of an offense is not privileged, though the charge was made without evil motive, and in the exercise of a political right.   *   *   *   We are of the opinion that the official act of a public functionary may be freely criticized, and entire freedom of expression used in argument, sarcasm, and ridicule upon the act itself; and that then the occasion will excuse everything but actual malice and evil purpose in the critic.   We are of the opinion that the occasion will not of itself excuse an aspersive attack upon the character and motives of the officer; and that, to be excused, the critic must show the truth of what he has uttered of that kind."

*Fitzpatrick* v. *Daily States Pub. Co.* 48 La. Ann. 1116, 20 So. 173.   This was an action to recover damages for publishing an article falsely accusing plaintiff of corruption in his relation to the municipal government.   The facts there were not unlike those in the case at bar.   The communication was held not to be privileged.   The court said: "Having been at the pains to

closely scrutinize all the authorities and text writers, both ancient and modern, we find them consistent and uniform to the effect that the publication of statements selected from other journals that are injurious to the reputation or character of private individuals or public officials; or editorial articles favorably commenting thereon, if false in fact, are libelous and defamatory, and are presumed to be malicious, and, therefore, actionable. The authorities, English as well as American, have generally held the publisher and editor of a newspaper to the same rigid responsibility with any other person who makes injurious communications. Malice on his part is conclusively inferred, if the communications are false, in fact. It is no defense that they have been copied with or without comment from another paper; or that the source of information is stated at the time, and the information is believed to be true."

In *Benton* v. *State,* 59 N. J. L. 551, 36 Atl. 1041, defendants were convicted of criminal libel in publishing an article falsely charging a police officer with extortion in purposely swelling the amount of a prisoner's fine, collecting it out of prisoner's family to procure his discharge, and pocketing the difference. Defendants contended the communication was privileged, and that it was, therefore, necessary for the prosecution to show actual malice. This defense, it was held, could not be made to the article complained of.

In *Clifton* v. *Lange,* 108 Iowa, 472, 79 N. W. 276, a newspaper article accusing a justice of the peace, in the performance of his duties, of a "dishonorable act," of "dishonest prejudice," and of helping "in the rotten and infernal steal," etc., was under consideration. Demurrer to a defense that the publication was privileged was sustained; the court saying: "The publication admitted to have been made is not privileged, and for the reason that it contains an attack upon the private character of the plaintiff."

In considering a publication by a newspaper of an article intimating that plaintiff was guilty of murder, Justice Holmes said: "And it equally is settled that the privilege of comment and criticism on matters of public interest, which a possible

murder may be assumed to be for the purposes of decision, does not extend to false statements." *Haynes* v. *Clinton Printing Co.* 169 Mass. 512, 48 N. E. 275.

The same justice wrote the opinion in *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 13 L.R.A. 97, 28 N. E. 1, where a newspaper was sued for publishing an article charging plaintiff with being a party to alleged frauds in the New York custom house. He there said: "We agree with the defendant, that the subject-matter was of public interest, and that, in connection with the administration of the custom house, the defendant would have a right to make fair comments on the conduct of private persons affecting that administration in the way alleged. But there is an important distinction to be noticed between the so-called privilege of fair criticism upon matters of public interest, and the privilege existing in the case, for instance, of answers to inquiries about the character of a servant. In the latter case a bona fide statement not in excess of the occasion is privileged, although it turns out to be false. In the former, what is privileged, if that is the proper term, is criticism, not statement; and, however it might be if a person merely quoted or referred to a statement as made by others, and gave it no new sanction, if he takes upon himself in his own person to allege facts otherwise libelous, he will not be privileged if those facts are not true."

The following quotation from *Davis* v. *Shepstone,* L. R. 11 App. Cas. 187, is then made with approval: "It is one thing to comment upon or criticize, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct. In the present case the appellants, in the passages which were complained of as libelous, charged the respondent, as now appears without foundation, with having been guilty of specific acts of misconduct, and then proceeded, on the assumption that the charges were true, to comment upon his proceedings in language in the highest degree offensive and injurious; not only so, but they themselves vouched for the statements by asserting that, though some doubt had been thrown upon the truth of the

story, the closest investigation would prove it to be correct. In their Lordships' opinion there is no warrant for the doctrine that defamatory matter thus published is regarded by the law law as the subject of any privilege."

Without discussing further the principles established by these authorities, we think it clear that the article here complained of is not privileged, and that there is, therefore, no question of privilege to be submitted to the jury.

The judgment is reversed, with costs, and the case remanded with directions to grant a new trial.                *Reversed.*