# CHALONER v. THE WASHINGTON POST COMPANY.

PLEADING; CONSTITUTIONAL LAW; LIBEL; DAMAGES; BURDEN OF PROOF;
QUESTIONS FOR JURY.

1. A demurrer to a declaration for libel admits the allegations of the declaration only in so far as it tests the actionable quality of the words used.  It therefore admits the charge of falsity, publication, and malice, and the correctness of the innuendos alleged, unless they attribute a meaning to the words which is not justified by the words themselves, or by extrinsic facts with which they are connected.

2. In view of the constitutional protection afforded a free press, publishers should be held to the highest accountability for unreliable publications, or such as tend to impute to any person conduct that would render him liable to punishment, or make him odious, infamous, or ridiculous.

3. Statements in a newspaper or publication that a person named is suspected of murder, that grounds for suspicion are said to exist, or that there is rumor of his confession, are actionable without an allegation of special damages.

4. A newspaper publication of such a nature as to cause the public to reasonably infer from reading it that a person referred to therein had been guilty of the commission of the crime of murder, is libelous *per se*, although it does not in terms charge the commission of that crime.

5. A publication charging that the plaintiff "killed G. while the latter was abusing his wife" is libelous *per se*, the qualifying words not being sufficient to convey the impression that the killing was justifiable.

6. The burden is upon the defendant in a suit for libel to show that the words used in the publication are to be interpreted in the sense different from their ordinary and natural import.

7. Where the reasonable inference to be drawn from the words themselves is doubtful, the question whether they are libelous is for the jury.

No. 2199.  Submitted December 8, 1910.  Decided January 3, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on demurrer to the declaration in an action for libel, the plaintiff electing not to amend.                                    *Reversed.*

The Court in the opinion stated the facts as follows:

This is an action for damages for libel, brought in the supreme court of the District of Columbia by appellant, John A. Chaloner, plaintiff below, against the appellee, the Washington Post Company. The declaration is in the usual form in libel. After setting forth in its inducement the good reputation of plaintiff, and alleging the attempt of defendant to deprive him his good name and reputation, it charges defendant with composing and publishing "the following false, scandalous, defamatory, and malicious libel, to wit:

" 'John Armstrong Chaloner (Chanler) (meaning the plaintiff), brother of Lewis Stuyvesant Chanler, of New York, and former husband of Amelie Rives, the authoress, now Princess Troubetskoy, is recuperating at Shadeland, the country home of Maj. Thomas L. Emry, near Weldon, North Carolina, where he had gone to recuperate following a nervous breakdown as a result of the tragedy at his home, Merry Mills, near Cobham, on March 15, when he shot and killed John Gillard, while the latter was abusing his wife, who had taken refuge at Merry Mills, Chaloner's home.

" 'Following the shooting, Chaloner suffered a nervous breakdown, and was ordered by his physician to take a long rest. He decided to visit his old friend, Maj. Emry, who, with Chaloner, was instrumental in founding Roanoke Rapids, a manufacturing town 5 miles from Weldon. Chaloner arrived at Weldon after traveling all night, and was immediately hurried to Shadeland, where he received medical attention and temporary relief.' "

Plaintiff, instead of alleging broadly that defendant intended to falsely and maliciously charge him with the commission of a crime, specifically limited himself to the averment of an intent to so charge him with the commission of the crime of murder. The declaration also contains an allegation of special damage to the effect that, by reason of this publication, plaintiff will be hindered and impeded in the assertion of his personal and property rights in certain litigation pending in the State of New

York. The declaration then contains the usual allegations in respect to damages. A demurrer was interposed by the defendant, which was, upon consideration, sustained by the court. Plaintiff refusing to further plead, a judgment was entered for defendant, from which this appeal is taken.

*Mr. W. E. Ambrose* and *Mr. John Ridout* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. Rudolph H. Yeatman* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is unnecessary to consider the averments of the declaration relating to special damage. The only question presented by the demurrer is whether the language of the publication is libelous *per se.* The demurrer admits the allegations of the declaration only in so far as it tests the actionable quality of the words used. It therefore admits the charge of falsity, publication, and malice, and the correctness of the innuendoes alleged, unless they attribute a meaning to the words which is not justified by the words themselves, or by extrinsic facts with which they are connected.

Our discussion may be prefaced by the suggestion that a strict rule of construction is to be applied where the libel consists of a printed publication. Society can in no way be benefited by the publication of libelous matter. In view of the constitutional protection afforded a free press, publishers should be held to the highest accountability for unreliable publications, or such as tend to impute to any person conduct that would render him liable to punishment, or make him odious, infamous, or ridiculous. The parties under such circumstances are not dealing at arm's length. While the individual assailed is refuting the false charges to one person, the publication is reaching thousands, thus placing the helpless victim completely within the power of his traducer. So strict is the rule that a mere statement in a newspaper or publication that a person named is sus-

pected of murder, that grounds for suspicion are said to exist, or that there is rumor of his confession, is actionable without even an allegation of special damages. *Haynes* v. *Clinton Printing Co.* 169 Mass. 512, 48 N. E. 275. With these well-established principles in view, we approach the consideration of the single question presented by this appeal.

It is contended by counsel for defendant that the publication does not charge plaintiff with the commission of the crime of murder, as alleged in the declaration. In determining whether or not the publication is libelous, we think it is not necessary that it in terms charges plaintiff with the crime of murder. It would be sufficient if the publication were such as to cause the public to reasonably infer from reading it that the plaintiff had been guilty of the commission of this crime. The unlawful killing of another may constitute murder, either in the first or second degree; and unless there is something in the publication which would clearly convey to the reader that the killing was justifiable, or the circumstances are such as to reduce the crime to manslaughter, and thus remove the impression that the plaintiff had been guilty of the crime of murder, then it must be held that the declaration states a cause of action. To this end it is not necessary that the declaration shall charge the crime with the certainty required in an indictment. *Thompson* v. *Lewiston Daily Sun Pub. Co.* 91 Me. 203, 39 Atl. 556; *Thompson* v. *Barkley,* 27 Pa. 263.

It is insisted by counsel for defendant that the statement in the publication that plaintiff "killed John Gillard, while the latter was abusing his wife," is sufficient to convey the impression that the killing was justifiable. With this contention we do not agree. To charge another with the killing of a human being, with no other words of limitation or qualification than are here used, imports the commission of the crime of murder in one of its degrees. When this is the natural deduction to be drawn from the language used, the burden is upon the defendant to show that the words used in the publication are to be interpreted in a sense different from their ordinary and natural import. *Emerson* v. *Miller,* 115 Iowa, 315, 88 N. W. 803;

*Shockey* v. *McCauley,* 101 Md. 461, 61 Atl. 583, 4 A. & E. Ann. Cas. 921.

We are of the opinion that the qualifying words here used are not sufficient to remove the reasonable inference that the crime of murder had been committed. Conceding, however, that the reasonable inference to be drawn from the words themselves is doubtful, the question is still one for the jury.

The judgment is reversed, with costs, and the case remanded, with directions to grant a new trial.                    *Reversed.*