AMORY S. HAYNES *vs.* CLINTON PRINTING COMPANY.

Worcester.        October 8, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Libel — Action — Privilege — Innuendo — Surplusage.*

An article in a newspaper, containing the statements that a person named is suspected of murder, and that there are said to be grounds of suspicion, and which is open to the interpretation that it was intended in a veiled way to countenance the suspicion, and also containing the statement that there is a rumor of his confession, is libellous, and its publication is actionable without an allegation of special damage.

Upon the question whether words published in a newspaper are privileged, as on the question whether they are libellous, the same rule applies to repetitions or insinuations of what is false that applies to false statements directly made.

If the innuendos in a declaration for libel are not borne out by the words in the article complained of, they may be rejected as surplusage, when the words, read as ordinary persons would understand them, are libellous *per se.*

TORT, for alleged libels, contained in two articles printed on July 3 and October 22, 1896, respectively, in a newspaper

owned and published by the defendant in Clinton.   The declaration, as amended, contained four counts, numbered sixth, seventh, eighth, and ninth.   The defendant demurred to the declaration, assigning various grounds of demurrer.   In the Superior Court, *Hardy*, J. sustained the demurrer, and ordered judgment for the defendant; and the plaintiff appealed to this court.   The facts appear in the opinion.

*W. S. B. Hopkins*, (*J. Smith* with him,) for the plaintiff.

*J. W. Corcoran*, (*W. R. Dame* with him,) for the defendant.

HOLMES, J.   A libel does not need the categorical certainty of an indictment at common law.   An insinuation may be as actionable as a direct statement, and nothing is better settled than that a defendant cannot escape liability merely by putting the insinuation or statement into the mouth of somebody else. *Hurley* v. *Fall River Daily Herald Publishing Co.* 138 Mass. 334, 336.   *Stevens* v. *Hartwell*, 11 Met. 542, 549, 550.   *Watkins* v. *Hall*, L. R. 3 Q. B. 396.   Odgers, Libel & Slander, (2d ed.) 166, 266, 267, 313.   The cases cited by the defendant to show that words of mere suspicion are not actionable are cases of slander, and have but a qualified, if any, application to libel. In libel it is enough, whatever the form, that the manifest tendency of the words is seriously to hurt the plaintiff's reputation, and the point at which words will be held to have that tendency is reached earlier than in slander.   *Clark* v. *Binney*, 2 Pick. 113, 116.   *Tillson* v. *Robbins*, 68 Maine, 295.   *King* v. *Lake*, Hardres, 470.   *Bradley* v. *Methwyn*, 2 Selw. N. P. (11th ed.) 1046.   *Thorley* v. *Kerry*, 4 Taunt. 355; *S. C.* 3 Camp. 214.

Bearing these general propositions in mind, we have no doubt that the words used in the articles complained of were libellous.   That set out in the sixth and ninth counts is headed " Singular Facts," and, referring to the death of one William F. Cohen, says of the plaintiff, " Prominent citizen of Bolton under suspicion.   Said he had a motive if he is ignorant of the details of Cohen's death. . . . It may be said with assurance that the case will be sensational to a degree.   A. S. Haynes [the plaintiff], a prominent citizen and town clerk of Bolton, it is believed, has fallen under the suspicion of the officers of the law, and, rightly or wrongly, the evidence will tend toward his possible connection with Mr. Cohen's death.   It is hardly prob-

able that the government can go so far as to establish any actual guilt of this person so far as the alleged murder is concerned, but it is said it will be shown that at least one man existed with a motive for the crime, whether or not he committed it." It then goes on to allege statements or rumors as to the plaintiff's money relations with Cohen, probably also libellous but unnecessary to state, which, if true in their suggestion, showed a motive, summing them up with the words, "A possible case, if not a very strong one, without the full evidence of the government." It ends with the sentences, " There are many who think the government can present no case whatever, as in the first place it is doubted if Cohen's death even can be positively established. So from the start the evidence would be wholly circumstantial and far from conclusive." It will be seen that, although the defendant does not commit itself fully to the conclusion that the plaintiff was guilty of murder, it does allege that he is suspected and that there are said to be grounds of suspicion, and the article is at least open to the interpretation that it was intended, in a veiled way, to countenance the suspicion. It does not need argument to show that such a publication tends, in the gravest way, to the injury of the plaintiff's reputation and standing.

Of the article set out in the seventh and eighth counts, it is enough to quote a part. It is headed " Cohen Case Revived," and begins, " Administrator Larkin sues Amory S. Haynes of Bolton for $489. Alleges Haynes obtained control of Cohen's money and papers, and refuses to make an accounting." Further on it continues, " The interesting portion of the case, and one of the portions that has been the darkest, that concerning the disposal of $489 belonging to Cohen, will be thoroughly investigated." Then, " Cohen . . . had to have a guardian, and Haynes is supposed to have been a self-appointed one." Later still are the following sentences : " A rumor that Mr. Haynes had confessed to the murder of Cohen was given considerable credence in town to-day, but lacks confirmation. Chief of Police Thomas Murphy, who was active in the case, professes entire ignorance. Constable Walter Cole and George H. Hurlburt of Bolton were also seen, and knew nothing concerning it." This also, it will be seen, not only states a rumor more or less accredited, but, while showing certain improbabilities, leaves the possibility of

the truth open, and even by the tone the preliminaries as to money matters and by such expressions as " professes entire ignorance " insinuates that it may be true after all. Without going into the part relating to the money relations of the plaintiff and Cohen, we think it plain that the suggestions as to murder in this article are libellous, as well as those in the first.

The publication of such libels is actionable without any allegation of special damage. It follows that the only general ground on which the defendant can escape liability is the ground of privilege, if any such appears on the face of the declaration. The case has not been argued on that ground. It is settled that newspapers as such have no peculiar privilege. *Sheckell* v. *Jackson,* 10 Cush. 25, 27. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 243. And it equally is settled that the privilege of comment and criticism on matters of public interest, which a possible murder may be assumed to be for the purposes of decision, does not extend to false statements. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 242. It only remains to add that on the question whether words are privileged, as on the question whether they are libellous, the same rule applies to repetitions or insinuations of what is false that applies to false statements directly made. It follows that the demurrers to the sixth and seventh counts, which declare generally on the articles, should have been overruled.

The eighth and ninth counts allege as the gravamen the publication of the same two articles, but aver that by them the defendant imputed to the plaintiff murder and embezzlement of funds, and fraudulent retention of funds intrusted to him by the deceased. It is not necessary to state these innuendos in detail, or to consider whether they all are borne out by the words. For if they are not they may be rejected as surplusage, when, as here, the words read as ordinary persons would understand them are libellous *per se.* It is settled in England, and, so far as the question has arisen, in this country, in accordance with good sense, that to that extent the plaintiff is not debarred from relying on the wrong alleged and complained of merely because he interpreted it as going further than it did in fact. *Harvey* v. *French,* 1 Cr. & M. 11. *Simmons* v. *Mitchell,* 6 App. Cas. 156, 162. Odgers, Libel & Slander, (2d ed.) 101. *Fry* v. *Bennett,*

5 Sandf. 54, 65.    *Cooper* v. *Greeley,* 1 Denio, 347, 360, 362.
*Kraus* v. *Sentinel Co.* 60 Wis. 425, 430.    2 Dane, Abr. 596.
                *Judgment reversed, and demurrer overruled.*