KARL HOEPPNER, Appellant, *v.* DUNKIRK PRINTING COMPANY, Respondent. (Actions Nos. 1 and 2.)

Fourth Department, November 7, 1929.

*Anthony Johnson*, for the appellant.

*Glenn W. Woodin*, for the respondent.

EDGCOMB, J. The court below has dismissed the complaints in the two actions between the above-named parties, upon the ground that they do not state facts sufficient to constitute a cause of action. The appeal brings up for review the correctness of such ruling. In determining the question thus presented, we are not perplexed by the possibility that the plaintiff may be unable to prove upon the trial all that he has set up in his pleadings. We may accept without reservation the truth of all the allegations of the complaint. If we do this, and if we give to the pleadings the liberal construction called for by section 275 of the Civil Practice Act, we think that the complaints state a cause of action.

The actions are for libel. In the fall of 1928 the plaintiff was instructor of physical education in the Dunkirk High School and coach of the football team of that institution. The defendant publishes the *Evening Observer*, the leading newspaper in the city of Dunkirk. The basis of the first action is an article published by the defendant on the 9th of October, 1928, which severely criticises the coaching system of the high school football team. The founda-

tion of the second action is a somewhat similar article published by defendant on November twenty-sixth of the same year.

The season of 1928 was a disastrous one for the high school football team. It met with reversals early in the season, much to the chagrin and disgust of its local supporters. The defendant attributed these defeats to the incompetent and inadequate coaching system employed by the plaintiff.

Space will not permit a detailed statement of all the charges made. The first article refers to " the Hoeppner-coached squad," and states that the team " is in dire need of a good drill in the rudiments of the game; " that the " squad has abundance of latent ability which has not been brought out by proper drilling; " that " lack of knowledge of the fundamentals of the game, low morale, particularly when the ' breaks ' are going against them, paucity of plays furnished, antiqueness of plays and formations being used, the lack of a modern coaching system, and other causes too numerous to mention, have been enumerated by the dopesters in their indignant discussion following last Saturday's slaughter; " that " the local followers of the game — and there are many — are wondering why the wealth of material on this year's team is not used to the greatest possible advantage; why the natural ability of many members of the Maroon squad is not polished up and improved upon through a thorough, intelligent and modern coaching system so that when out of town schools book the local high they will be scheduling a game with a feared and worthy adversary rather than merely arranging a practice workout, as has been the case in recent years." The second article describes a game between the Dunkirk and the Falconer High School teams, in which the local eleven was successful; it refers to the exhibition as the second " set-up " in two weeks, and states that it is fortunate that such games were on the schedule. Reference is again made to plays employed by the Dunkirk team, and the following language is used: " There is one consolation to the bleacher fans concerning Dunkirk's plays, however. The majority of the plays are so ancient that an up-and-coming coaching staff like Jamestown's may have never even heard of them, and the Red and Green eleven will not be on its guard for antiques."

While the articles complained of fail to charge the plaintiff with the commission of any crime, or to attack his moral character, the fair inference to be drawn from the language used is that the plaintiff is an inefficient coach, and has failed to properly instruct the team in modern plays and in the technic of the game, so that they could successfully meet and compete with other teams in their class.

The complaints allege that the accusations were false, and that they were willfully and maliciously made. There is no allegation of any special damages sustained by the plaintiff by reason of any of the charges made.

The law does not give reparation for all derogatory or disparaging words. If the articles in question are nothing more than a fair and honest comment on a matter of public interest, they are not libelous, either *per se* or *per quod*. The rule is well settled that the acts and conduct of one who, by his position or occupation, commands the attention and interest of the public, may lawfully be made the subject of candid and honest comment and criticism, not only by the press, but by the people generally. Every one has a right to discuss the personal deportment, behavior and qualifications of one who occupies the public eye much more freely than he has to talk about a private individual in whose affairs the public has little or no interest. Just and reasonable criticism of a public person is not libelous. It would indeed be a sorry day for the country if men in public life were beyond censure. (*Cortright* v. *Anderson*, 208 App. Div. 1; *Duffy* v. *N. Y. Evening Post Co.*, 109 id. 471; *Philipp Co.* v. *New Yorker Staats-Zeitung*, 165 id. 377, 393; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144, 154; *Hamilton* v. *Eno*, 81 id. 116.)

This court, speaking through Mr. Justice SEARS, said in *Cortright* v. *Anderson* (*supra*): " To comment upon the acts or conduct of a public man is the right of every citizen."

A newspaper, however, has no right or immunity which is not shared by the public in general. (*Stuart* v. *Press Pub. Co.*, 83 App. Div. 467, 477; *Patten* v. *Harper's Weekly Corp.*, 93 Misc. 368, 381; *Scheckell* v. *Jackson*, 10 Cush. 25, 27; *Haynes* v. *Clinton Printing Co.*, 169 Mass. 512, 515.)

This right of frank and impartial criticism has ofttimes been inaccurately referred to as " a qualified privilege." It is not a privileged communication in the strict sense of that term. There is a well-recognized distinction between the two. Communications which, under ordinary circumstances, would be libelous, become privileged when the author is justified in saying what he has because of the occasion. One in such a position may say or write things about another which would be actionable if uttered by someone not similarly situated. Fair and honest criticism is something which every one can indulge in, and which is forbidden to no one. Therefore, there is no special immunity to the author. It is incapable of being a libel, because it is not a defamation of one's character. If it occasions any damage to the individual censured, the law does not consider such loss an injury, because it is one which the person

ought to sustain. If it is attempted to be made the basis of an action, the question which arises is not one of privilege, but one of libel or no libel.

Football is a sport which grips the interest of the public. The student body, the alumni, and the people generally residing in the locality of the institution, have a deep concern in the team and its success. The players and their coach are public characters in a greater or lesser degree, depending upon the standing of the team. Ball players and athletes, like public officials, actors, authors, musicians and artists, are objects of interest to the public. To say that the people generally cannot fairly and honestly discuss and disapprove their acts and accomplishments, even though their comments may be caustic, sarcastic and cutting, is to deprive the public and the press of liberty of speech, which is guaranteed to all by the supreme law of the land. Public criticism and censure is one of the penalties which every man suffers when he enters public or semi-public life.

But when the comment of an individual or newspaper goes beyond the limits of honest and candid criticism, it becomes actionable, unless the statement is true and the author can justify for that reason. Whether a defendant has stepped beyond the realm of fair comment is usually, although not always, a question for the jury.

In the instant case the complaint alleges that the charges against the plaintiff were willfully and maliciously made. An honest critic does not attempt to gratify a private grudge or to bring intentional injury to an individual under the guise of public criticism. A comment on a matter of public concern is not fair if it is actuated by actual malice. The very aim and purpose of permitting a free discussion of matters of public interest would be thwarted if what was said was impelled by enmity and malevolence. Spite and ill-will defeat the defense of honest and just criticism. (*Thomas* v. *Bradbury, Agnew & Co.*, L. R. [1906] 2 K. B. 627; *Merivale* v. *Carson*, L. R. 20 Q. B. Div. 275; *Ashcroft* v. *Hammond*, 197 N. Y. 488; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 id. 144; *Hamilton* v. *Eno*, 81 id. 116; *Philipp Co.* v. *New Yorker Staats-Zeitung*, 165 App. Div. 377; *Belknap* v. *Ball*, 83 Mich. 583, 589.)

What will appear on the trial we do not know, but on this motion we are bound by the allegations of the complaints, which state that the accusations are not only false, but that their publication was actuated by malice and ill-will. No matter how important it may be that people should be permitted to indulge in a free discussion of public affairs, it would never do to tolerate the publication in the public press of false statements concerning an indi-

vidual, under the color of criticism, when, in reality, it was a malicious attack, actuated by ill-will on the part of the author. If this could be done with impunity, all public men would be at the mercy of the newspapers.

The accusations being false and having been uttered maliciously, we are bound to hold that these articles exceed that fair and just discussion of the merit, character and quality of plaintiff's ability as a football coach, which the law gives to the defendant, and that the language has passed into the realm of libel.

This leaves for consideration the further question of whether the articles are libelous *per se*. If they are not, the complaints are fatally defective because of the absence of an allegation of special damage.

The rule is well settled that words which tend to injure or prejudice a person in his business or profession are actionable, without an allegation of special damage. The law recognizes one's right to live, and that the majority of people are compelled to earn a living. (*Ben-Oliel* v. *Press Publishing Co.*, 251 N. Y. 250; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 id. 144; *Mattice* v. *Wilcox*, 147 id. 624; *Krug* v. *Pitass*, 162 id. 154; *Moore* v. *Francis*, 121 id. 199; *Cruikshank* v. *Gordon*, 118 id. 178.)

The settled rule of action governing the law of libel is stated by ANDREWS, J., in *Moore* v. *Francis* (*supra*), and is quoted with approval by CRANE, J., in *Ben-Oliel* v. *Press Publishing Co.* (*supra*) as follows: "The principle is clearly stated by BAYLEY, J., in *Whittaker* v. *Bradley* (7 D. & R. 649): ' Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed."

The plaintiff is a teacher and an athletic coach; he makes his living by such calling. The charges made against him in the articles complained of cannot but harm and damage him in his profession. They practically charge him with incompetency as a football coach. True, they do not do so categorically, but one cannot escape liability for a libelous utterance merely because he has put a statement or an insinuation into the mouth of another. (*Haynes* v. *Clinton Printing Co.*, 169 Mass. 512.)

Under the authorities above cited, it is clear that the publications are l belous *per se*, and that an allegation of special damage is unnecessary.

For the reasons stated, we think that the order in each case

should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to defendant to answer within twenty days after service of a copy of the order to be entered upon the decision of this court.

All concur, except THOMPSON and CROSBY, JJ., who dissent and vote for affirmance. Present — CROUCH, TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

In each case: Order reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days upon payment of the costs of the motion and of this appeal.