*Western District*

**ANNETTE PAGNONI, et al**

**v.**

**GROWERS OUTLET, INC.**

(May 16, 1960)

*Present:* Riley, P. J. and Hobson, J.

Case tried to *Garvey, J.,* in the District Court of Springfield.

*Hobson, J.* This is an action of tort for slander. The plaintiff alleged by amendment allowed February 1, 1960, that on or about December 27, 1958, the defendant did publicly, falsely and maliciously accuse the plaintiff of a crime of larceny by uttering the

following words, "Take the Q-Tips out of your pocketbook", which words he repeated (meaning thereby that the plaintiff did steal a package of Q-Tips from the defendant's store). The defendant's answer denied the allegation and claimed the statements were made under such circumstances as to be privileged.

In addition to the finding of facts made by the trial judge, hereinafter set forth, the only portion of the evidence set forth in the report which in our judgment is necessary to make the issues involved clear and understandable is the statement that at the time the defendant's manager was speaking to the plaintiff "in the check-out line, and to the rear of the plaintiff, were four customers who were within hearing distance but there was no evidence that they actually heard this conversation."

The trial judge made the following finding of facts:

"About 3:00 P.M. on December 27, 1958, Annette Pagnoni (plaintiff) accompanied by her infant child, was shopping at a self-service market owned and operated by the defendant in Springfield. She was using a 'push basket' into which she placed goods intended for purchase. When she completed her selections she joined a line of other customers at one of the check-out counters.

"When she reached the cashier, she removed all of the articles from the basket and placed them on the counter for the purpose of having the cost determined, which she was

prepared to pay. As the cashier commenced to tabulate the purchases on a register, she was approached by one Francis Moriarty, the store manager. He was not known to her at this time. Moriarty said, in a 'loud' voice, 'Take the Q-Tips out of your pocketbook.' She did not answer. He repeated this statement in the same tone of voice, whereupon she asked, 'What are you talking about?' He requested she open her pocketbook, which she did. It did not contain any Q-Tips. While doing this she pointed to the check-out counter, saying, 'The Q-Tips are on the counter.' The manager looked into her pocketbook, and saw the Q-Tips on the counter and left, saying nothing. At this time, in the check-out line, and to the rear of Mrs. Pagnoni were four customers, who, I find, heard this conversation.

"One of the duties of the manager was to check on customers to prevent pilfering. Shortly before the incident complained of, he was told by one Abe Weiner, an employee of the defendant, that he had observed Mrs. Pagnoni remove a double package of Q-Tips from a shelf on the cosmetic counter and place it in her pocketbook at the bottom of the push basket. I find that she did not do this. No further surveillance of the plaintiff was made by anyone connected with the defendant. The information given by Weiner prompted Moriarty to make the statements set out above to the plaintiff at the cashier's counter.

"The plaintiff was upset, nervous, sick to her stomach, and given to crying as a result

of this incident. She took nerve pills for about two weeks.

"I find that the manager's statements to the plaintiff, under all the circumstances existing at the time, were defamatory, accused the plaintiff of committing a crime, were maliciously made, and were not privileged. No evidence was presented of any damage sustained by the plaintiff Robert Pagnoni, husband of Annette.

"If the plaintiff shall file, and have allowed, within thirty days of receipt of notice of these findings, an amendment to Count 1 of the declaration, alleging facts conformable to the proof, my finding based upon consideration of all the evidence, shall be for the plaintiff on Count 1, and damages shall be assessed in the amount of $300.00. I find for the defendant on Count 2."

The defendant made the following requests for rulings of law:

1. Upon all the law and evidence, a finding for defendant is warranted.

2. Upon all the law and evidence, the words were spoken under such circumstances as to be privileged thereby rebutting the presumption of malice and the action will not lie unless malice in fact is proved.

3. Upon all the law and evidence, the finding should be for the defendant because the communication was privileged and was not made with express malice.

4. Upon all the law and evidence, the finding should be for the defendant because the plaintiff has not sustained the burden of proving express malice.

5. The evidence most favorable to the plaintiff does not warrant a finding of express malice.

6. Upon all the law and evidence, the defendant had a right to detain and question the plaintiff as provided in General Laws, Chapter 231, Section 94B.

The trial judge found for the plaintiff and acted as follows upon the defendant's requests for rulings:

"No. 1 Granted, but I do not so find.

No. 2, 3, 4 and 5 are Denied. See findings and decision.

No. 6 Denied. This statute is not applicable to the facts in this case."

The defendant contends that the trial judge was in error in not finding for the defendant under Request No. 1, for the reason that there was no accusation of the crime of larceny; that plaintiff could not have committed larceny until she went beyond the cashier's station and left the premises without paying; and that there was no evidence which warranted the trial judge in finding that the conversation was heard by the persons behind the plaintiff in the check out line.

With the first reason alleged, namely, that there was no accusation of the crime of larceny, we do not agree. While the words "Take the Q-Tips out of your pocketbook" could have a non-slanderous meaning, they may be reasonably susceptible of such a meaning when the circumstances under which they were spoken are considered. Circumstances attending the use of the words might show that they were spoken with that meaning. *Friedman v. Connors,* 292 Mass. 371, 374. The manager had just been informed by a

fellow employee that he had seen the plaintiff remove a double package of Q-Tips from a shelf and place it in her pocketbook at the bottom of the push-cart. It is reasonable to infer that the manager believed that those Q-Tips had been stolen and placed in the pocketbook and by using these words was demanding a return of stolen goods. The spoken words, in view of the circumstances in and under which they were spoken, were defamatory and imputed the commission of a crime to the plaintiff, and were actionable *per se.* A slander, as was said of a libel by Holmes, J. in *Haynes v. Clinton Printing Co.,* 169 Mass. 512, 513, "does not need the categorical certainty of an indictment at common law". *Friedman v. Connors, supra.*

Neither do we agree with the defendant's second reason that the plaintiff could not have committed larceny until she went beyond the cashier's station and left the premises without paying. If the plaintiff had taken the Q-Tips from a shelf and placed them in her pocketbook, and not in open view on the push-cart, with the intent to take them out without paying for them, as it could be found the manager believed she had done, under the decision in *Commonwealth v. Luckis,* 99 Mass. 431, the instant she had perfect control of the article there was a larceny and asportation.

Neither is there any merit to the third reason advanced by the defendant that the trial judge was not warranted in finding that the four persons who were in the checkout

line and to the rear of the plaintiff and who were within hearing distance heard the conversation and that this finding was not based on any evidence contained in the report. As stated before, it says in the report that there was no evidence that these persons actually heard the conversation. We take this to mean that no testimony was offered to this effect. There is, however, evidence of facts stated in the report upon which the finding of the trial judge can be properly based. The report states that these people were within hearing distance; that the words were spoken in a "loud" voice, not once, but twice. From these facts the trial judge could properly and reasonably infer and find that that which could have been heard, was in fact actually heard.

The trial judge granted this request, that on the law and evidence a finding for the defendant was warranted, but found otherwise. In so doing there was no error on his part, as contended by the defendant.

The defendant contends that there was error on the part of the trial judge in denying the Request No. 2, claiming that it was the duty of the trial judge to first determine as a matter of law whether or not the occasion was a privileged one and should have ruled that it was, and then should have proceeded to decide whether or not the plaintiff had proved express malice or malice in fact sufficient to overcome the privilege. The defendant relies on the case of *Sheehan v. Tobin,* 326 Mass. 185. The request asked in that case

was "The occasion of the publication declared on was a privileged occasion". The Court held that as it appeared that the facts out of which the occasion arose were not in dispute, it was the duty of the trial judge to determine, as a matter of law, the question whether or not the occasion was a privileged one, should have decided that it was and should have given the requested instruction.

We hold, however, that there is a vast difference between the request above stated, namely: "The occasion of the publication declared on was a privileged occasion" and that requested by the defendant in the instant case, namely: "Upon all the law and evidence the words were spoken under such circumstances as to be privileged thereby rebutting the presumption of malice and the action will not lie unless malice in fact is proved".

The request in the *Sheehan* case called for a consideration only of "the occasion of the publication"; the request in the instant case called for a consideration not only of the occasion for the speaking of the words by the defendant's manager to the plaintiff, but by its own words called for consideration of all the "circumstances" under which the words were spoken. This includes the spoken words themselves, the way and manner in which they were spoken, the time and place, the presence of other persons, in fact the request called for a consideration and determination of the question of fact whether the defendant's manager was acting in good faith, or in part from malice.

The law applicable to this request is well stated by *Pion v. Caron,* 237 Mass. 107, as follows:

"The defendant Amedee Caron testified that on the occasion referred to he did not accuse the plaintiff of theft but discharged her for other reasons, and that whatever words he then used were spoken in answer to a question by her as to what she had done. This was denied by the plaintiff. In these circumstances it was a question of fact for the jury on all the evidence as to what was said by the parties on that occasion.

It is the contention of the defendant that if the words alleged were spoken, they were spoken under such circumstances as to be privileged. It is undohbtedly true that if the defendants, having reasonable cause to believe that some one had been stealing goods from the store, had attempted merely to discover the guilty party for their own protection, and in good faith, without malice, and in the belief that it was true had charged the plaintiff with the theft, the words would be privileged.

Where, as in the case at bar, the words alleged to have been spoken are of themselves actionable, the law infers that they were spoken with a malicious intent. This inference, however, may be rebutted when the circumstances are such as to exclude the idea of malice and it is shown that they were spoken in good faith in the performance of a duty with an honest intent to protect the interest of the party using the words, and the plaintiff must prove malice in fact in order to recover. There was evidence that the defendant, who is alleged to have made the charge, spoke in a loud tone of voice. He testified that he was "a little angry;" he further testified that when he discharged the plaintiff he did not believe she had stolen anything. As the verdict has established the fact that he did accuse her of stealing, it would seem that he made the charge although he believed

it to be false. It was a question of fact whether he was acting in good faith or in part from malice. *Robinson v. Van Auken,* 190 Mass. 161; *Crafer v. Hooper,* 194 Mass. 68. Accordingly the defendants' . . . second, . . . and . . . requests were rightly refused."

Request No. 2, which the Court said was rightly refused, read as follows:

"2. The occasion on which the defendant is alleged to have spoken the words set forth in the plaintiff's declaration was a privileged occasion."

We find no error on the part of the trial judge in his refusal to grant Request No. 2.

Next we consider the defendant's contention that the trial judge erred in his refusal to grant Requests numbered 3, 4 and 5, dealing with the question of express malice or malice in fact. In his brief he states this question is usually one of fact, but argues there was no evidence sufficient to justify a finding of express malice. We feel that, in this case, the question of express malice or malice in fact was a question of fact, and that the requests were properly denied.

In *Pion v. Caron,* supra, the Court said that the Request No. 4 reading

"There is no evidence sufficient to justify a finding of malice on the part of the defendant, and therefore, the plaintiff is not entitled to recover any damage for the speaking of said words",

was rightly denied, because it was a question of fact whether he was acting in good faith or in part from malice. In any event, we believe there was sufficient evidence to warrant

the finding that the words were spoken in part from malice.

It is said in *Atwill v. Mackintosh,* 120 Mass. 177, 183:

"The jury (or the judge hearing a case without a jury), the words in parenthesis added by us, may draw the inference of malice, not only from extrinsic facts, — as, for instance, from proof that the defendant knew the charges to be false, or had no reason to believe them to be true, — but also from the terms in which the communication is made. If those terms are in manifest excess of the occasion; *Fryer v. Kinnersley,* 15 C.E. (N.S.) 422; if they contain strictures on motives and conduct not warranted by the facts; *Cooke v. Wildes,* 5 E. & B. 328; or if they go beyond what is reasonable in computing crime; all these circumstances would tend to show malice. It was therefore a mistake to withdraw the case from the jury. It should have been submitted to them to decide whether it was an honest report, made in good faith, justified by the information which the defendant had obtained, and with a reasonable purpose of protecting the rights and interests of the party in whose behalf he had acted; or whether, on the other hand, it was made with a purpose wrongfully to defame the plaintiff."

From a review of the terms and circumstances in and under which the words were spoken, we hold that the trial judge could have found that the defendant's manager went beyond that which was proper and necessary to protect the rights and interest of his employer; that instead of asking the plaintiff, politely, to go to his office or some other inconspicuous place and bring her bag with her and there make an investigation, he chose to speak to her in the presence of other people,

and before making any inquiry of her, to accuse her then and there of the crime of larceny; the trial judge could infer that with the information the defendant's manager had received, he believed her to be a thief and sought and intended to humiliate and disgrace her. This would be evidence of malice. Further, the loud voice used by the defendant's manager in accusing the plaintiff of larceny and the unnecessary publicity given to his accusation by its being made in the presence of customers are evidence of malice. *Grindall v. First National Stores, Inc.,* 330 Mass. 557, 559. See also: *Crafer v. Hooper,* 194 Mass. 68, 73. We are not concerned whether the evidence of malice appeared strong or weak at the trial. We think the report or record discloses its presence, and sufficiently to warrant the trial judge in the finding he made.

Lastly, the defendant claims the trial judge erred in denying Request No. 6, which was to the effect that on the law and evidence the defendant had a right to detain and question the plaintiff as provided in G. L. c. 231, §94B. This section was inserted by St. 1958, c. 337 entitled "An Act relative to defences in actions for false arrest brought by persons suspected of shoplifting." The trial judge said he denied this request because the statute was not applicable to the facts in this case. He was correct. This statute deals only with actions for false arrest. It has no application to actions for slander, as it changes in no way our law relative to actions for slander.

Nowhere do we find any prejudicial error and the report should be dismissed.

Matthew J. Ryan of Springfield, for the Plaintiff.

Joseph Swirsky of Springfield, for the Defendant.