Mary M. **PERRY**, Plaintiff, Appellant,

v.

The **HEARST CORPORATION**, Defendant, Appellee.

No. 6310.

United States Court of Appeals First Circuit.

June 30, 1964.

Brian E. Concannon, Boston, Mass., with whom Leo V. Concannon and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellant.

Gerald May, Boston, Mass., with whom O. S. Sughrue, Jr., and Rich, May & Bilodeau, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This appeal from a judgment dismissing an action for libel on defendant's motion to dismiss, following removal from the Massachusetts Superior Court, raises

the single question of whether the article declared on could be found defamatory of and concerning the plaintiff. The plaintiff, a citizen of Massachusetts, is the widow of one George M. Perry. The defendant, The Hearst Corporation, is a Delaware corporation with its principal place of business in New York which publishes a daily newspaper in Boston. On the day in question its principal front page headline read as follows:

"MAY EXHUME 2 IN CAPE MYSTERY," followed by the phrase, "Story on Page Two." Under a similar subheading there appeared on page 2, *inter alia,* the following:

"The Veterans Hospital here suspected that 39-year-old George M. Perry of North Truro, whose death is being probed by federal and state authorities, was suffering from chronic arsenic poisoning, the Record American learned Wednesday.

"State Police said the bodies of Perry and his brother, Arthur, who is buried near him, would probably be exhumed from St. Peter's Cemetery in Provincetown.

"George Perry died in the VA hospital in Jamaica Plain last June 9, 48 hours after his 10th admission there since Dec. 29, 1959.

"His brother, who lived in Connecticut and spent two days here during George's funeral, died approximately a month later.

"About two months later, in September, George's mother-in-law, 74-year-old Mrs. Mary F. Mott, who had come to live with her daughter, died, too. Her remains were cremated.

\* \* \* \* \* \*

"An autopsy, performed with the permission of his wife, Mary, disclosed that 500 times the usual amount of arsenic was in his hair and abnormally high quantities of the same lethal substance were in his brain and liver.

Perry, according to police was his wife's second husband. \* \* \*"

There ensued an account of various medical examiners, police detectives and public prosecutors who had the matter under consideration. Following this it was stated that the police "expected to talk with Mrs. Perry and her son, Wayne, to see if they can assist in the investigation."

 We deal first with certain procedural points. The complaint alleges that it was not true that the plaintiff's brother-in-law came from Connecticut to attend the funeral of her husband and died a month later, but, rather, that he had died two months before. The defendant contends that the plaintiff's singling out this portion as false means that she admits the rest of the publication to be true. This is unsound. The complaint alleges that the entire publication was false. Truth is an affirmative defense. It is not established by arguing that the complaint is impliedly self-contradictory. Furthermore, truth is not a defense if the publication was made with actual malice. Mass.G.L. c. 231, § 92. Plaintiff alleges malice. Without at this stage defining malice, but see Bander v. Metropolitan Life Ins. Co., 1943, 313 Mass. 337, 344, 47 N.E.2d 595, it is sufficient to say that on a motion on the pleadings it cannot be taken in defendant's favor that it was free therefrom. Robinson v. Coulter, 1913, 215 Mass. 566, 571, 102 N.E. 938. However, for present purposes, or, more exactly, for future purposes, we will assume that defendant was in fact free of actual malice, and that the facts concerning plaintiff's husband's death, and her mother's as well, were correctly reported. We would still believe the article actionable.

A jury could readily find that defendant's account carried the implication that plaintiff's husband and her brother-in-law were suspected of having met their deaths as a result of criminal activity by someone.[1] The only question is whether

---

1. Defendant, with some justification, points out that the plaintiff's complaint does not allege, by way of innuendo, that the article stated or implied a criminal act, say-

the article could be read to indicate the plaintiff as a suspect. Defendant, properly, does not contend that a criminal charge based in terms of suspicion is insufficiently definite to be actionable. Haynes v. Clinton Printing Co., 1897, 169 Mass. 512, 48 N.E. 275. Nor need a charge be made directly. Merrill v. Post Publishing Co., 1908, 197 Mass. 185, 193, 83 N.E. 419. Since the publication is defamatory if "it discredits the plaintiff in the minds, not of * * * wise, thoughtful and tolerant men, nor of ordinarily reasonable men, but of any 'considerable and respectable class in the community,'" and the "emotions * * of mankind must be considered," Ingalls v. Hastings & Sons Publishing Co., 1939, 304 Mass. 31, 33, 22 N.E.2d 657, 658; see also Mabardi v. Boston Herald-Traveler Corp., Mass., 198 N.E.2d 304,[2] we do not think it could be said a jury could not find that the article pointed to the plaintiff. This is not a case where it was asserted simply that the plaintiff's husband met his death by acts of persons unknown. The identity of a possible suspect was made more specific by the suggestion that the brother had met with the same fate following his visit "here" from Connecticut. It was much further localized by the mention of the death, "too," of plaintiff's mother two months

after she had "come to live with her daughter." The reference to the fact that the mother's "remains were cremated" could be found to imply that this fact was regrettable under the circumstances. Indeed, in this total context the otherwise irrelevant observation that the plaintiff had had a previous husband might even be regarded as having significance.

The defendant, having chosen to make a story out of this, is in a poor position to say there was none. It must not be overlooked in such cases that the very fact a matter is viewed as newsworthy, particularly when given special prominence, means that something of possible importance is being communicated.[3] Taking the article as a whole we believe it would be only natural for even reasonable readers (fn. 2, supra) to assume that they were being furnished with something more than necrology, or trivia concerning the relict of a routinely posted cadaver, and that they could well conclude that the plaintiff was suspected of having engaged in highly sinister conduct.

Judgment will be entered vacating the judgment of the District Court and ordering further proceedings not inconsistent herewith.

ing only that the deaths of the plaintiff's brother-in-law and her mother "were related to the death of George M. Perry and to Plaintiff." The complaint might have been better drawn. However, the failure to allege a full innuendo does not diminish the meaning that can be found on the face of the publication itself. Rutherford v. Paddock, 1902, 180 Mass. 289, 62 N.E. 381.

2. The defendant says we must read this phrase in the light of various Massachusetts decisions stating that the publication must be "reasonably capable of [a] defamatory meaning," Tobin v. Boston Herald-Traveler Corp., 1949, 324 Mass. 478, 487, 87 N.E.2d 116, 121, and finding no libel when defendant's article was "reasonably interpreted," Aldrich v. Boyle, 1955, 328 Mass. 30, 32, 101 N.E. 2d 495, or could not "be reasonably understood in a defamatory sense," Ricci

v. Crowley, 1955, 333 Mass. 26, 27, 127 N.E.2d 652, 653, or because "readers could not reasonably conclude that the matters alleged indicated fault * * *." Grande & Son, Inc. v. Chace, 1955, 333 Mass. 166, 169, 129 N.E.2d 898, 900. If this means, which may be questioned, that an article may be viewed as it would be reasonably interpreted by respectable readers (for disreputable readers, see McLoughlin v. American Circular Loom Co., 1 Cir., 1903, 125 F. 203, 205) who are not reasonable men, we do not face that difficulty in this case.

3. It was on this basis that the Maine sea captain had a right to complain of the fact that the mate, although with exact truthfulness, wrote in the ship's log, "Captain sober today." See In re Union Leader Corp., 1 Cir., 1961, 292 F.2d 381, 387, cert. den. 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190.